## BUXTON LAYTON AND OTHERS v. EDWARD HALL.

This court concurs in the views expressed by the present chief justice in the dissenting opinion in this case, (16 Tex. R., 272,) as to the application of the rule then laid down by the majority of the court. The question in the case was deemed by him to be, as to the sufficiency of the evidence, to establish the alleged fraud by the defendant in a settlement with one of the plaintiffs, and not as to the sufficiency of oral testimony to establish a trust in lands.

On the question as to the existence of the fraud, it is for the jury to say whether or not the evidence is sufficient to establish the charge; and to charge them that it could not be established by the testimony of a single witness was erroneous.

It can hardly be called a legal presumption, that one member of a firm is aware of the correspondence of the firm, and acquainted with its business affairs and transactions.

APPEAL from Galveston. Tried below before the Hon. Peter W. Gray.

This was a suit brought by Buxton Layton and others, composing the firm of Layton & Co., against Edward Hall for the recovery of 2400 acres of land lying on Galveston Island, which they claimed by virtue of a contract made by them with the defendant, in the year 1838, for the location of five pieces of land scrip, (640 acres each,) which the defendant agreed to locate and procure titles for at his own expense, receiving one-fourth thereof for his services.

Hall located the scrip on Galveston Island in 1839, together with a large amount of other land scrip, in conjunction with Bryan, with whom he was associated in the land business. Hall advised Layton & Co. of the location by letter, dated April 12, 1839. Shortly after this, Levi Jones claiming a prior and better right to the land, sued out an injunction, restraining Hall and others from proceeding further with their surveys. A compromise was effected, by which it was arranged that Jones should have a one-half interest in the enterprise of Bryan, Hall, Franklin and Watrous, who were associated together in the project of making locations on the Island, of scrip amounting to over 21,000 acres. By the terms of the compromise, it was arranged that the scrip (Bryan & Toby scrip,) in Hall's name should be used in making the location, and that the patent should be taken in the joint names of Jones & Hall; Jones agreeing to return to Hall scrip equal in value and amount to one-half of the quantity required for the location. (The scrip having been transferred in blank, had been assigned to Hall by filling the blanks with his name.)

The surveys then went on, and scrip for 18,215 acres (including the five pieces of Layton & Co.,) was used in making the locations. The balance of the scrip, amounting to over 3000 acres, returned to Hall, was by him, as the witness understood, placed in a surveyor's hands, to be located on islands further west On the 28th of November, 1840, a patent was issued to Jones and Hall for the 18,215 acres. A few days thereafter, congress, by joint resolution, declared that the islands were not subject to location.

Afterwards, there was a partition between Jones and Hall, under a decree of the District Court of Galveston county, the land being divided equally between them by alternate sections.

In 1844, (after the partition between Hall and Jones,) Hall was called upon by Buxton Layton, a member of the firm of Layton & Co., for an account of the scrip. The result of the interview was that Hall returned to Buxton Layton certain other scrip for 3200 acres, and that Layton surrendered to Hall the receipt of the latter for the original five pieces of scrip, which re-

ceipt embraced in its terms the contract for their location, and there appeared to be no other written evidence of the contract. This suit was brought in 1848; plaintiffs setting out their contract with Hall, his location of their scrip on Galveston Island, as well as of the other scrip held by him and Bryan; the compromise with Jones; and the partition aforesaid. The plaintiffs alleged further that Hall, being in New Orleans in the year 1844, called upon Buxton Layton, one of the plaintiffs, (Robert Layton, a former member of the firm, then being deceased, and Thos. Layton, another member, being absent in Europe,) and falsely and fraudulently represented that said scrip to him, said Hall, so entrusted, had not been located, but that the surveyor by him employed to locate it, had lost or mislaid the same, but that it would be found and returned to said Layton & Co.; and as collateral security for its return, delivered to said Buxton Layton other unlocated scrip, (3200 acres last referred to) for an equal quantity of lands; and upon the representation of said Hall that the unlocated scrip would serve in lieu of his original receipt and engagement, and by his request the said Buxton was induced to deliver the said receipt of said Hall to him, then believing the representations to be true, and that the scrip had not been located. The plaintiffs alleged that the correspondence of their firm had been conducted and kept by said Thomas Layton, then absent; that said Buxton was not familiar with the same, and, at the date last aforesaid, he was ignorant of the fact that the lands had been located and patented; and if he had ever been informed thereof, the fact had escaped his memory. That he had acted solely on his reliance on the statements of Hall that the lands had not been located, that the original scrip would be returned, and that the scrip then delivered should be retained merely as collateral security for the return of the original scrip.

The answer of Hall denied the charges of fraud and false representations, setting out the embarrassments attending the location, and the interest of Bryan, Watrous and Franklin in the locations made on the Island; alleging that he informed Buxton Layton that he had not been able to make the scrip available for the number of acres authorized to be located by it, and that the attempted

location was involved in doubt and litigation, and averring that the scrip delivered by him to Buxton Layton was not given as collateral security, but in lieu of the return of the original scrip, and was accepted by said Buxton in satisfaction of the original contract of 1838, which was then cancelled, and his receipt surrendered to him by said B. Layton.

The plaintiffs proved by the deposition of John Williams, (who had been their book-keeper since 1841,) that Buxton Layton called on Hall in 1844 for an account of the five pieces of scrip. That Hall stated it was in the hands of a surveyor and had been mislaid; that he could not find the surveyor to get it. He gave to Layton other scrip as security for the original 3200 acres, until he could procure it from the surveyor to return to him, Layton. That Layton then returned to Hall the original receipt for the scrip. The witness annexed to his answers the letter dated April 12th, 1839, which acknowledged the location by Hall of the scrip for Layton & Co., on Galveston island. He also stated that at the time of the conversation between B. Layton and Hall in 1844, Thomas Layton, a member of the firm, was absent in England. That previous to that time Thomas Layton attended to the correspondence of Layton & Co., and that. Buxton Layton never did attend to the correspondence. Also that Thomas Layton, on his return, expressed surprise when he was informed of what had been done, and referred to the letter of Hall of April, 1839, on file and above referred to.

Special issues were submitted to the jury, who returned responses thereto which in effect affirmed the allegation of the petition as to the existence and contents of the original contract, the location by Hall of the scrip received from Layton & Co., on Galveston island; that Hall wrote to them the letter dated April 12th, 1839, advising them of the location; and that Hall got subsequently a perfected title to the land located by virtue of the scrip belonging to Layton & Co.

Among the special issues submitted were the following:

9. "Did Buxton Layton in the year 1844 know of the letter?" Ans., "Yes."

10. "Did Hall falsely represent to Layton & Co., or one of

the firm, in the year 1844, that their scrip was lost or mislaid?" Ans., "No."

11. "Did Hall get back his receipt from Layton & Co. by false and fraudulent representations?" Ans., "No."

12. "With what member of the firm did he have the conversation which led to his getting back the receipt?" Ans., "Buxton Layton."

13. "Did Hall at the time of his getting back his receipt give Layton & Co. any land scrip? If yea, how much?" Ans., "Yes, 3200 acres."

14. "Was this scrip so given to Layton & Co. by Hall as collateral security for the return of the original scrip for which Hall had given his receipt?" Ans., "No."

15. "Or was this scrip given to Layton & Co. by Hall in full satisfaction and settlement of his contract with them, and of the scrip placed in his hands by them?" Ans., "Yes."

The court charged the jury as follows:

"The 9th, 10th, 11th and 12th issues, or questions, are connected with each other, and involve the decision of the charge of fraud made by the plaintiff, but the 11th requires more to sustain it than the others.

"The presumption of fairness exists in favor of every transaction, and must prevail until the contrary is established satisfactorily; and it has been ruled by the Supreme Court in this case, and I feel bound to instruct you, that the evidence of a single witness to verbal statements of a party is insufficient to sustain a charge of fraud, or establish a trust in land, resulting from it, unless such evidence is strengthened and supported by other evidence of attending circumstances. It is also the rule of law, that the credibility of a witness is to be considered by a jury with reference to the probability of his statements as being consistent or not, with other testimony, and with the ordinary motives and course of conduct of men in their transactions.   *   *

"If then you believe the testimony of Williams, and that it is supported by other circumstances to your satisfaction, you will find the issues No. 9, 10 and 12 for the plaintiff, but otherwise find for the defendant on them. If you find issues No. 9, 10 and

Layton v. Hall.

12 for the plaintiff, and also further believe from the evidence, that Buxton Layton was ignorant that the scrip had been located by Hall on the island, either from correspondence of Hall with the firm or otherwise, and that Hall concealed the fact from him, and falsely represented to him what had been done with the scrip, and that Layton was deceived thereby, and induced by Hall to give up his receipt to him, then you will also find the 11th issue for the plaintiff; but if you are not satisfied from the evidence, that Hall made such false representations, or if you believe that Buxton Layton was informed of the location of the scrip on the island either by the correspondence of the firm with Hall, or in any other way; or that he was not induced by false statements by Hall, but acted on other grounds to give up the receipt, then, in either case, find for defendant on the 11th issue.

"If you find from the evidence that the scrip given to Laytons by Hall was as the security for the return to them of the original scrip, put in Hall's hands by Layton & Co., that would be a rescission of the contract for its location, and in that case you will find on the 15th issue that it was in settlement of the contract so far as it related to the location, and either in full settlement for the scrip itself or not, as you may decide from the evidence."

The plaintiff asked the court to give (among others) the following instructions:

"Fraud may be proved by circumstantial evidence alone, and the direct testimony of a witness to the actual fact of the commission of a fraud is not necessary. If then the jury are satisfied from the circumstances of the case proved in this cause, that Hall got back his receipt by fraudulent representations they will so find." Which was refused.

Upon the verdict upon the special issues returned by the jury, the court rendered judgment for the defendant.

*Allen & Hale*, for the appellants.

*Sherwood & Goddard*, for the appellee.

BELL, J.—This case has twice before received the consideration

14 Y

of this court. · On the first trial of the cause, there was a verdict
and judgment for the plaintiffs. This court reversed that judg-
ment, and remanded the cause for another trial. The opinion of
the court, on the first appeal, will be found in 10th Tex. Rep.,
page 57. The judgment of the District Court was then reversed,
because, in the opinion of this court, evidence was excluded from
the consideration of the jury, which this court was of opinion
ought to have been admitted; and because this court was not satis-
fied with the evidence of fraud on the part of Hall in the trans-
action with Buxton Layton in the year 1844. This court then
said, "we are not satisfied with the evidence of fraud; and in the
absence of fraud on the part of the defendant, we are clear that
the plaintiffs were not entitled to a recovery at all." In another
place the court said, "the evidence of fraud is not so satisfactory
as it ought to be, to set aside the settlement made between Buxton
Layton and Hall in 1844." The evidence of fraud to which these
expressions of the court referred, was the testimony of the witness
Williams, which has been relied on by the plaintiffs on every trial
of the cause, to establish fraud on the part of Hall in the trans-
action with Buxton Layton, in the year 1844.

On the second trial of this cause in the District Court, the evi-
dence that had been excluded on the former trial was admitted;
and the issue was distinctly submitted to the jury, whether or not
Hall had practised a fraud upon Buxton Layton in the transaction
between them in the year 1844, and upon this issue the jury found
that Hall had practised a fraud upon Buxton Layton. On the
second trial of the cause, there was again a verdict and judgment
for the plaintiffs. On the second appeal, the judgment of the
District Court was again reversed, and the cause was again re-
manded. The opinion of a majority of this court upon the second
appeal will be found in 16th Tex. Rep., page 274. This court
then commented upon the testimony of Williams, the witness upon
whose testimony the jury founded their verdict on the issue of
fraud. The court said, "we cannot, in principle, distinguish this
case from the common one where a trust is attempted to be proven
by oral evidence of the admission or declarations of the trust,
orally made by the trustee." In another part of the opinion, it

was said, in reference to the testimony of Williams, "such evidence, though competent, is always received with great caution, and subjected to severe scrutiny, because of the great probability of the witness being mistaken in part, or not correctly understanding, or correctly hearing the conversation; and the difficulty, if not the impossibility, of disproving it." This court did not then say, in so many words, that the evidence of a single witness was not sufficient to establish fraud on the part of Hall, but the court said so in effect, by declaring that "the District Court erred in refusing to grant the motion to set aside the verdict, and grant a new trial."

From the opinion of a majority of the court on the second appeal, the present chief justice dissented, and expressed his views concerning the case in a dissenting opinion, which will be found in 16th Tex., page 279. In his dissenting opinion, the present chief justice said, "the doctrine as to what will be sufficient evidence to establish a trust, manifestly has no application to the case. It was not questioned that the defendant was the agent of the plaintiffs in the location of their land scrip, and in procuring the title. * * * * There was and could be no question upon that subject. The question was, whether the discharge of the trust had been procured by fraud."

On the third trial of the cause in the District Court, the presiding judge instructed the jury, in accordance with the opinion which had been declared by a majority of this court, that "the testimony of a single witness to verbal statements of a party, is insufficient to sustain a charge of fraud, or to establish a trust in land resulting from it, unless such evidence is strengthened and supported by other evidence of attending circumstances." The judge, also, on the last trial of the cause, instructed the jury as follows, at the request of the defendant:—"It is to be presumed that Buxton Layton, in 1844, was aware of the correspondence between Layton & Co. and Hall previous to that time, and was acquainted with the business affairs and transactions of the firm, and to defeat this presumption, the testimony must establish, to the satisfaction of the jury, Buxton Layton's ignorance of such correspondence and transactions." I quote this last instruction merely

for the purpose of remarking, that although the proposition con-tained in it may be true, as matter of fact, and proper to be addressed to a jury in the way of argument, it can hardly be called a legal presumption that one member of a firm is aware of the correspondence of the firm, and acquainted with the business affairs and transactions of the firm; and a jury would be very apt to be misled by being told that such a legal presumption exists.

The main question in the case, and what has been the main question in the case from the beginning, is as to the sufficiency of the evidence of the witness Williams to establish fraud on the part of Hall in the transaction with Buxton Layton in the year 1844. And upon this question, although it is embarrassing to us to with-hold our assent from the rule laid down by a majority of this court on a former appeal in this same cause, yet we feel bound to express the opinion that the rule laid down in the opinion in 16th Texas, cannot be supported upon principle in its application to this case. We think, as the present chief justice then thought and said, that the doctrine as to what will be sufficient evidence to establish a trust, has no application to this case. The question here is simply this : can fraud in the procurement of a settlement between parties, be established by the testimony of a single wit-ness? In the opinion of this court in this cause, reported in 10th Texas, it was admitted that the testimony of Williams was com-petent testimony. If this be so, we think it was for the jury to say whether or not it was sufficient to establish the truth of the proposition which it was offered to support. The law may well declare, that a certain description of evidence shall not be deemed competent to establish or prove certain facts, or to disprove other facts. But as has been said, in language that cannot be mended, "the law has no scales wherein to weigh the different degrees of probability; still less to ascertain what weight of evidence shall amount to proof of any disputed fact." We think that it should have been left to the jury to say, whether or not the evidence showed that the settlement between Hall and Buxton Layton in 1844, was procured by the fraud of Hall, without instructing them that the fraud could not be established by the testimony of a single witness.

It is proper to say that the chief justice has left it to my brother Roberts and myself to say whether or not we would adhere to the rule laid down in the opinion of a majority of the court in 16th Texas. Believing that rule to be unsound in its application to a case like the present, and as this case is still within the power of the court, we have believed it to be our duty to declare what we think is the true rule.

We will not discuss other questions presented, for this question of fraud is the controlling one in the case, and the other questions which are now presented may not arise upon another trial.

The judgment is reversed and the cause remanded.

Reversed and remanded.