WHITE, SMITH & BALDWIN v. DOWNS, EXECUTOR OF COYLE, AND WATT, ADMINISTRATOR OF CUTHBERT-SON.

## ON REHEARING.

1. The opinion and reasoning for a judgment in the Supreme Court form no part of such judgment, nor is a judgment of reversal remanding for a new trial final between the parties, nor conclusive of their rights.
2. The vendor's lien arises by implication as a natural equity creating a constructive trust in the vendee, that he should not keep the estate without paying for it; it arises and exists at the time of the sale, and results from the sale on credit without security.
3. The transfer by delivery of a note secured by the vendor's lien, payable to bearer, passes the lien.
4. The transfer of a note payable to bearer, and secured by the vendor's lien as collateral to secure a less sum than the note so transferred, carries with such transfer the lien, and also the right to priority of payment out of the sum realized on such collateral and the security therefor.
5. The vendor's lien is not lost by an unsuccessful suit by attachment upon other property, nor as between parties by any mere failure to sue.
6. A failure to obtain satisfaction at law has never been held good cause for refusal of equitable relief.
7. The priority of payment out of a note and its security, which passes by the transfer of a note payable to bearer, and secured as collateral to secure a less sum, can be enforced as to the security against a lien of equal standing retained by the party so transferring such collateral.
8. See discussion of facts in legal proceedings with reference to diligence in asserting claims against an estate and against a security by one holding such claim as collateral.

APPEAL from Harrison.   Tried below before the Hon. J. W. Pope, special judge.

15

*Henry G. Hall*, for appellants, cited Story's Equity, Secs. 633, 634, 642, 645, 1035, 1226; 19 Texas, 500, Mc-Alpin v. Burnett; 23 Texas, 442, Nesmuth v. McLemore; 3 Mich., 295, Thurbur v. Jewett; 1 Comst., 496, Butler v. Miller; 11 Texas, 82, Jordan v. Hudson; 19 Texas, 444, Sublett v. McKinney; 16 Texas, 232, Hicks v. Bailey; Paschal's Digest, Article 4787, Note 1072; 2 Rob. La., 243, Salzman v. His Creditors; Edw. on Bail., 237; 6 Texas, 162, Knight v. Holloman; 16 Peters, 11, Swift v. Tyson; Story on Prom. Notes, Secs. 186, 284; Story on Bills, 372; Story on Cont., 725; Edwards on Bail., 199, 223, 237, 260; 11 Wall., 253, Levy v. Stewart; Story's Conf. Laws, Secs. 538, 539, 554; 25 Texas, 247, Bedwell v. Thompson; 8 Texas, 257, Drake v. Brander; 24 Texas, 240, Parker County v. Sewell; 16 Texas, 447, Robertson v. Paul; 28 Texas, 548, Niblett v. Shelton; 19 Texas, 513, Murray v. Able.

*Wm. Steadman* and *H. McKay*, for appellees.

McADOO, J.—The matters embraced in this case have been twice adjudicated in this court before; and as the judgment here appealed from is in accordance with those adjudications, we affirm the judgment of the court below in all things.

*Walton & Green*, for appellants, for rehearing.

## ON REHEARING.

GRAY, ASSOCIATE JUSTICE.—This cause was before the Provisional Supreme Court in 1870, and is reported in 33 Texas, 421. Counsel for appellees claim that the opinion and judgment then delivered and pronounced are conclusive of this case. The cause and parties are the same; but if we understand the complex, voluminous and multifarious pleadings, interventions and reconventions in

the several consolidated suits, with the numerous excep-
tions, exhibits, etc., repeated time and again in various
forms, in the record now here, which tend to confusion
rather than to plain and clear statement of the issues in-
tended to be made, we find quite a new and different case
made by the proceedings had after the judgment of 1870,
which remanded the cause for a new trial.

But if this is the same case as that formerly before the
court, it is a misnomer to call the opinion and a simple
judgment of remand for a new trial *res judicata*. The
opinion delivered may properly control the lower court,
and ordinarily should do so, and would undoubtedly, on
the same facts, be entitled to great weight on a second
appeal to this court. But the opinion or reasoning for
the judgment is no part of it, and the judgment itself is
not final between the parties, and therefore is not conclu-
sive.

This view is illustrated by the history of the case of
Layton and Hall, reported in 10 Texas, 57; 16 Texas, 279;
and 25 Texas, 204. In the two former opinions a majority
of the court held a doctrine on a question of evidence
which was decisive of the case. This was unwillingly
followed by the district judge who presided on the third
trial, and yet, on a third appeal, that very doctrine was
expressly repudiated as erroneous, and the cause again
remanded. If there was no *res judicata* in that cause,
it is plain there is none in this. Upon remand the cause
was still before the court, the pleadings subject to amend-
ment, and additional evidence admissible—all of which
appear by the record now here, materially affecting the
relative rights and duties of the parties.

The case now here, as shown by the facts and history
of proceedings had, seems to be substantially as follows:
John Watt sold and conveyed by absolute deed to Coyle
a tract of land in Harrison county, in consideration of
which Coyle executed to him three promissory notes, of

the same tenor and date, except that they fell due at yearly periods, on January 1, 1859, 1860, and 1861. The notes were made payable to bearer, for the sum of $2473.33 each, and expressed on their face the consideration for which they were given. The first note was paid, but the second and third were transferred before maturity, by delivery to one Cuthbertson, who then resided in or near Caddo parish, Louisiana. He transferred the second note by delivery to appellants, as collateral security for a debt on account to them, as merchants, also residing in Caddo parish, at Shreveport. Their agent gave a receipt for the note, bearing date January 24, 1860, saying in it, "which I promise to sue for or return to him; my lawyers are Harris & Denson, Shreveport, Louisiana;" and signed it as agent for appellants.

The facts as to transfer of the note as collateral security did not appear, by pleading or evidence from either party, on the former trial. In February, 1860, appellants, by the attorneys named in the receipt, instituted suit on the note in Caddo Parish District Court, alleging that they were holders and owners of it by transfer from Watt, the payee; and procured an attachment, which was levied on personal property of Coyle, found there, of greater value than the sum of the note. Coyle was cited and answered, and he regained possession of the property by giving a release or replevy bond, with two sureties. He defended, and postponed trial of this suit until the war between the States and stay laws suspended suits for debt in Louisiana and Texas. Coyle died in 1862, and Downs became administrator on his estate in Texas in 1863. The suit in Louisiana was revived after the war against an ancillary administrator appointed there, and judgment for appellants rendered, in February, 1868, for the debt, with only five per cent. interest; but unfortunately, as fully appears from the evidence, the ancillary administrator had no estate, and the sureties on Coyle's

replevy bond had become insolvent, so that appellants realized nothing by that attachment suit.

Cuthbertson also instituted suit against Coyle, in March, 1861, in Harrison District Court, upon the third note, in which suit he claimed the security of the vendor's lien on the land. This suit was also defended until after Coyle's death, suspended during the war, and judgment not recovered until June, 1868, against his executor, with a decree for sale of the land.

Meantime appellants had also instituted suit on the second note in that court against Coyle's executor, in April, 1867, alleging their ownership of it, and also claiming the vendor's lien; and in July, 1868, they amended by setting up the judgment recovered in Louisiana in aid of their claim. But Cuthbertson's administrator, Watt, having recovered his judgment and decree, now intervened in appellant's suit, resisting their recovery, mainly on the ground that they had lost or abandoned their right to the vendor's lien by reason of their suit and levy of attachment on personal property and proceedings in Louisiana. Judgment was rendered, and appellees appealed.

After the opinion of the court sustaining this defense and remanding the cause, both parties amended their pleadings. Appellants amended, setting out their claim of debt against Cuthbertson's estate by account (afterwards acknowledged by his note for $1010, given as partner of one McMakin, on the eighth of December, 1861), for which the Coyle note had been transferred as collateral security, and claiming judgment to the extent of that debt as a lien on Coyle's land in preference to Cuthbertson's claim. But Watt, administrator of his estate, also amended, claiming that by reason of appellants negligence in prosecuting their suit and note against Coyle, they had lost all right to lien and debt as against Cuthbertson's estate, and were liable in damages for the dif-

ference between their debt against Cuthbertson and the amount of the note on Coyle.

It further appears, that after the remand the intervenor, administrator of Cuthbertson, applied to the court, in the administration of Coyle's estate, for an order to the executor to sell the land in satisfaction of the Cuthbertson judgment of June, 1868. This was resisted by appellants, who appeared for that purpose, asserting their right and pendency of their suit. The court ordered the sale in satisfaction of Cuthbertson's decree, and it was advertised, but sale was stayed by injunction sued out by appellants. This suit was answered in vacation, and the injunction dissolved by an interlocutory judgment, but requiring a refunding bond of appellees before selling under the order of sale, and retaining the suit for final hearing ; also ordering it to be consolidated with the former suit pending between the parties. The refunding bond was given, and the land sold by the executor of Coyle—the intervenor as administrator of Cuthbertson, and his attorneys, becoming the purchasers. The land sold for less than the amount of the Cuthbertson note and judgment. And in this connection it is to be noted, that it also appears that Coyle's estate had become insolvent in 1865, as a result of the war and emancipation.

On final hearing the injunction suit was dismissed on demurrer of the intervenors. The question of damages for its wrongful issue was submitted to the jury, along with various other special issues of law and fact. These it will not be necessary now to notice further than to say that the most material of them were found contrary to our view of the evidence and law of the case. The result was judgment for appellants, against Coyle's insolvent estate, for the whole sum of the note held by them, without the benefit of the vendor's lien ; refusal of all relief against Cuthbertson's estate for his debt to them ; and

judgment in reconvention for damages in favor of Cuthbertson's estate, against appellants, for $3047.14, being the difference, with interest, between the debt of Cuthbertson to them and the whole amount of the note against Coyle held by them as collateral; and also for $250 damages against appellants and their sureties on injunction bond for wrongfully suing out the injunction against the sale ordered, and also for costs of suit.

Motion for new trial was made and overruled; and the errors assigned require consideration of the material questions arising on the entire record, and facts, as they appear to us. This we will proceed to do in their natural order and sequence.

It is not denied that the vendor's lien on the land sold to Coyle existed as security for the payment of the notes of Coyle to John Watt, given in consideration for the land. That lien arose by implication, as a natural equity creating a constructive trust in the vendee, that he should not keep the estate of another without paying for it. The doctrine is borrowed from the civil law; but in England it was only maintained in equity when the vendor had exhausted his remedies at law and failed to obtain satisfaction of the debt. In America the doctrine generally held is more enlarged and more like that of the civil law—that this lien arises and exists at the time of the sale, and results from the sale on credit, without other security, regardless of the subsequent inability of the purchaser to pay, or of failure to compel him to do so by suit at law. Certainly such is the result of the decisions heretofore made in Texas; and it logically follows, that a failure to obtain satisfaction by other legal process does not destroy the lien, but rather tends to strengthen the natural equity upon which it is founded.

The vendor's lien, however, properly understood, is not in all respects the same as the express lien often reserved in deeds of conveyance for payment of purchase money,

nor as strict mortgages or deeds of trust for it, nor yet as the security held by a vendor who has only given a bond for the title. These are often confounded with the vendor's lien, because security of the purchase money is common to all of them. But the vendor's lien arises wholly from inference or implication (Wynn v. Flanagan, 25 Texas, 778), which is invisible and cannot be recorded; the others are from express contract, visible to all, and may be recorded. All of the same consequences do not therefore necessarily result, as to assignees or holders of the debt secured by the vendor's lien, nor as to purchasers of the land liable to it, as between the original parties and privies, as do often occur in the cases of express lien by contract.

One result, which is ordinarily common to all classes of securities, is, that a transfer or assignment of the debt carries the benefit of the security also, unless the contrary appear to have been the intention of the parties. This has been held to be so as to the vendor's lien, and was so held in this case—33 Texas, 425. (See also Moore v. Raymond, 15 Texas, 554; Murray v. Able, 19 Texas, 213; McAlpin v. Burnett, 19 Texas, 500.)

An assignment of a debt may be by parol as well as by deed. (2 Story's Eq. Jur., Sec. 1047, and cases cited in note.) In the cases of Murray v. Able and McAlpin v. Burnett, above cited, the transfer was by delivery of a note payable to bearer, as in this case of both notes to Cuthbertson. He then held the vendor's lien for both of them.

There was, however, not only a transfer of the note first falling due by delivery to appellant, but a contemporaneous agreement between them and Cuthbertson, the intention and legal effect of which becomes material. That agreement was, that appellant should hold it as collateral security for the debt of $1010 from Cuthbertson to them, and that they they should sue on and collect it, the proceeds of course to be applied to pay that debt,

It is clear that the main purpose of this agreement was to secure appellants in payment of Cuthbertson's debt to them ; and that, too, from proceeds of the note first falling due, having lien on the land.   It is not legitimate to presume that Cuthbertson intended to conceal the existence of the lien, and reserve it exclusively for the third note, which he retained ; for honesty and fair dealing are to be presumed in preference to fraud or concealment. The intention of the parties seems to have been what the legal effect of their agreement also is believed to have been.   Courts of equity uphold such assignments and carry out their intention.   "Thus, for instance, if A., having a debt due to him from B., should order it to be paid to C., the order would amount in equity to an assignment of the debt, and would be enforced in equity, although the debtor had not assented thereto.   The same principle would apply to the case of an assignment of a part of such debt.   In each case a trust would be created in favor of the equitable assignee on the fund, and would constitute an equitable lien upon it."   (1 Story Eq. Jur., Sec. 1044, and notes.)   So, also, we apprehend, is the case where the debt is secured, that the benefit of the security would first inure to the assignee in preference to the retained claim on the property by the assignor.   We conclude, therefore, that at the time of the transfer and agreement the appellants acquired not only the benefit of the vendor's lien, but also right to priority of payment of their debt against Cuthbertson from the proceeds, over the interest he still had in the surplus, and also over the lien attaching to the third note retained by him.

The question then arises, have appellants lost their right to the lien then held by them ?   It is insisted that they have ; first, by the suit by attachment and levy on sufficient personal estate of Coyle in Louisiana in their own names as owners, and by negligence in prosecuting that suit to satisfaction ; and second, by negligence

in suing Coyle's estate in Texas in their own names, and not suing for the lien before Coyle's estate became insolvent.

As to the first ground, appellees have the opinion in this cause reported in 33 Texas, which virtually sustains their position as the case was then presented. The reasoning there, however, does not satisfy our minds. It is not perceived how that suit in any way injured the interests of Cuthbertson in any respect. It was at most an attempt to gain additional security by attachment, and perhaps enforce earlier payment. Had it been successful by payment of the debt by Coyle himself, the security for Cuthberson's retained note would have been doubly increased, it is true; but, if unsuccessful, the rights of the parties remained as before, unaffected by it. That suit appears to have been prosecuted with ordinary diligence. It was delayed by Coyle's defenses until the war; the property attached was released by the replevy bond and security, and it then remained suspended, as most suits for debt were in Texas also, until the close of the war. Coyle having died, it was revived in 1866, and judgment obtained against his ancillary administrator in February, 1868, some months before Cuthbertson could recover judgment in his suit against the same party in Texas, instituted also before the war. Appellants were certainly as diligent in their suits in Louisiana and Texas as he and his administrator were in the other. But it is said they might have made the debt from the sureties on Coyle's replevy bond in the Louisiana suit. As matter of fact this now appears not to be true ; but if true, it is not perceived how that would have relieved Cuthbertson. The sureties so paying the debt to appellants would have been subrogated to their rights and security of the vendor's lien, and could have enforced it against Coyle and Cuthbertson, as appellants could. (Jordan v. Hudson, 11 Texas, 82 ; Hicks v. Bailey, 16 Texas, 232 ; Sublett v.

McKinney, 19 Texas, 445; Black v. Epperson *et al.*, *ante*, 162.) Appellees, therefore, have not been injured by the failure of appellants to get payment in that suit, and their right of lien was not lost or abandoned by it. A failure to obtain satisfaction at law has never been held good cause for refusal of equitable relief, but rather as strengthening the right to it. Whatever may be said of this view, on the case as formerly presented, there can be no doubt of the conclusion on the new facts now appearing.

As to the second grounds of negligence alleged, the suit of appellants against Coyle's estate in Texas was instituted in 1867 on the note, in their own names as owners of it. They were so to all intents as against Coyle, and as against Cuthbertson until he paid the debt for which it had been transferred by him as collateral security. They had no reason to anticipate opposition from his representatives, and no other party could object to their right as owners. It was more the duty of the intervenor to set up Cuthbertson's interest than appellants', or, at least, as much as theirs, for it was immaterial whether appellants' suit was prosecuted in their own names against Coyle's estate, or for the benefit of themselves and Cuthbertson. They were responsible over for any surplus over his debt to them which they might collect; but if there was any doubt of their responsibility, then it was the interest, if not the duty, of the administrator of Cuthbertson to intervene for the purpose of making the interest of the estate known and protecting it, but not his duty to resist appellants' recovery *in toto*. Why the real facts were not earlier disclosed by the administrator may be attributed to his ignorance of them, and excuse his first opposition to appellants' claim; but after the disclosure of them, some other motives must be found for his continued opposition, not only to their claim of lien and payment of a just debt due from Cuthbertson, but actually

for damages on the ground of negligence in not collecting their debt from Coyle. If there be any cause, legal or equitable, for such a result, it ought to be made very manifest to a court of equity.

The diligence used in prosecuting the Texas suit by appellants against Coyle was as great as that of the intervenor in his suit for the same purpose. During the war, while the Louisiana suit was pending, appellants may reasonably be excused for not presenting their claim to the executor of Coyle in Texas for allowance. It cannot be presumed that he would have allowed it; and if he had, the stay laws would have prevented its enforcement by suit for sale of the land or property of Coyle. The subsequent insolvency of his estate resulted from causes which no diligence could have prevented. It is not shown that there was less degree of diligence than creditors generally used in such cases, so as to make appellants chargeable with gross neglect. Moreover, the prominent fact appears, that they did recover an equitable judgment and decree in July, 1868, at the same term when intervenor recovered his, in spite of his intervention and opposition ; and that this judgment was reversed on the appeal of appellees, which has caused all the subsequent litigation and delay. Under such circumstances, it cannot be reasonably and justly held that appellants have lost their lien; and much less that they have lost their debt against Cuthbertson, and are liable to damages for negligence. We are of opinion that appellants are entitled to their interest in the note held by them, and the vendor's lien to the extent of the debt of Cuthbertson, with interest on it, as against his estate ; and to prior satisfaction for that amount from the proceeds of sale of the land, in preference to the interest in that note, and the third note retained and held by Cuthbertson ; unless appellants are concluded by the subsequent proceedings had in relation to the order of sale of the land.

As the suit of appellants was still pending when application was made by intervenor, in the matter of the estate of Coyle, for an order of sale, it would seem to have been unnecessary for appellants to oppose it, as purchasers *pendente lite* would be charged with notice of appellants claim.

Indeed, it is questionable whether they had the right to appear, as they were not acknowledged creditors of the estate. But they did appear by attorney, and were allowed to oppose the order of sale. That order does not decide that they had no right or interest ; nor was it competent for the court so to decide in that special proceeding. It does not, therefore, conclude the rights of appellants, which were then involved in the suit pending in the same court, in exercise of its general jurisdiction. The subsequent suit for injunction by appellants may also have been unnecessary for the protection of their rights, for the same reason, that their suit to enforce their lien was still pending. But we cannot say that it was wholly unwarranted, and the special judge decided properly that it should be consolidated with the pending suit. It does not appear to us to have been such an injunction, wrongfully sued out for delay, as would justify damages to be assessed against appellants ; and in the view we have taken of the case, the injunction should have been reinstated on the final hearing, or else the parties to the refunding bond should have been adjudged to pay the debt and interest due from Cuthbertson's estate, which was liable for its payment, at least to the extent that it realized from the proceeds of that sale in the land or money.

The court is of opinion, that the verdict found on material issues was without evidence and contrary to the law, and that the decree rendered was erroneous. It is therefore reversed, and the cause remanded for a new trial.

REVERSED AND REMANDED.