### H. & T. C. R'y Co. v. Paul Bremond.

(Case No. 5442.)

1. RAILROAD SHARES—LIEN FOR PURCHASE MONEY—CONTRACT CONSTRUED—A lien is not the result of any form of expression, but the name given to a right; and what creates the right produces the lien. See opinion and statement for a contract held to create a lien upon railroad shares for the unpaid purchase money.

2. SAME—TRANSFER OF LIEN—Though it has been held that a general lien given to a corporation for any indebtedness of its members is an incident of the relationship, and not of the debt, and hence does not pass with the latter, (Angell & Ames on Corp., sec. 355), the reason of the rule does not apply to a lien given to secure, not indebtedness generally, but a particular demand. In such a case the lien passes with the debt or ceases.

3. SAME—It is well settled in Texas that the assignment of the debt passes with it the liens that secure it. (White v. Downs, 40 Tex., 226 ; 33 Tex., 425 ; 15 Tex.,

554; 19 Tex., 213.) That the debt is a simple promissory note, or that the assignee was ignorant of the existence of the lien, does not affect the rule.

4. SAME—CONDITIONAL STOCK CERTIFICATES—PURCHASER—A railway corporation issued conditional stock certificates, and, in some cases, bonds, providing on their faces that unconditional certificates should issue when the notes given for the conditional certificates or bonds were paid. The notes were transferred by the company, and never paid. The assignees of the certificates and bonds applied to the company for, and received, unconditional certificates. *Held*:

(1) As the bonds and conditional certificates informed their assignees that they were not entitled to shares unless the notes were paid, in the absence of excusing facts, they must be held *particeps criminis* in the company's wrongful act.

(2) After the company negotiated the purchase notes, it should have held the unissued shares in trust until the assignees of those notes were paid, and it was its duty to ascertain that the notes had been paid before issuing the stock.

(3) Holders of the stock, with notice and without consideration, were in no better position than the company itself.

APPEAL from Harris. Tried below before the Hon. James Masterson.

About March, 1857, the Houston & Texas Central Railway Company, desiring to extend its road, contracted with parties to do the work, and agreed to pay them in "stock notes." The "stock notes" contemplated in the agreement were notes given by subscribers to stock in the company, and were in the usual form of promissory notes. Simultaneously with their execution the company delivered to the subscribers "conditional certificates of stock," which were in two forms, as follows:

*First:*—

HOUSTON AND TEXAS CENTRAL RAILWAY COMPANY.

$——— CONSTRUCTION STOCK BOND. No.———

The Houston and Texas Central Railway Company is fully bound unto ........................................................................................ in the sum of ............................................................................................Dollars with eight per cent. per annum interest from date.

The condition of this obligation is such that, whereas, the said .................................................................. has this day executed and delivered to said company his .................................................... promissory notes for the aggregate sum of $....................to aid in the construction of said railway; being divided into payments of ............................ dollars each, due .................. months respectively after date. Now, when he shall have paid the said notes, and interest due thereon, according to their tenor and effect, the said company hereby undertakes to deliver to said ..................

full paid stock of said company for the amount of this bond, and in full satisfaction therefor. The evidence of payment of the notes to be by endorsement hereon by the secretary of said company.

.......................................................................... President.

..........................................................................Secretary.

Executed this .................... day of ................ 185.....

*Second:—*

HOUSTON AND TEXAS CENTRAL RAILWAY COMPANY.

(Late Galveston and Red River Railway Company.)

No.———              NOT TRANSFERABLE.              $———

This certifies that ................................................................... is proprietor of ................................................... shares of one hundred dollars each in the capital stock of the Houston and Texas Central Railway Company, established by acts of incorporation passed by the legislature of the state of Texas. This certificate is not entitled to any dividend until the notes for which it is given are paid, when, upon surrender hereof, an unconditional certificate will be given by the company. Given at the company's office in Houston, this the ................ day of ..............., 1857.

[SEAL.]              ...........................................................President.

.......................................................... Secretary.

The charter of the company provided, that if a subscriber failed to pay any amount due on shares subscribed by him, "the directors may sell at auction and transfer to the purchaser the shares of such delin- quent." Notes of the character this indicates were transferred by the company to contractors who built its road.

These notes becoming due were put into judgments, the makers pros- ecuted to insolvency, and these judgments, to the amount of the plain- tiff's judgment in this suit, were the property of appellee, who presented to the company and demanded the sale of the stock, for which they were contracted, to realize his debt, but was denied on the ground that the stock was not now in a conditional state, but the company had issued it to its co-defendants as "full paid," "unconditional" stock. It was admitted that the company did so without requiring evidence of the payment of the subscriptions. The company and its co-defend- ants refused to pay the amounts of subscription. The suit was insti- tuted against the company and the individual directors who had por- tions of the stock.

There was a verdict and judgment for the plaintiff against the Houston & Texas Central Railway Company for $12,594.93, and this decree also: "And it appearing to the court that the plaintiff is entitled to recover over and against the other defendants, as assignees of the stock against which the said sum of $12,594.93 was a charge, so much as is found by the jury to be the value of these respective shares by them converted, it is therefore ordered that the plaintiff do have and recover of the defendant, Wm. R. Baker, $5,113.43; against Maria Van Alstyne, as executrix of Wm. A. Van Alstyne's estate, $4,348.49; of Cornelius Ennis, the sum of $417.20; of Wm. M. Rice, the sum of $1,726.30, they having received stock respectively to the value of said amounts, on which plaintiff's claims were an equitable lien."

*Geo. Goldthwaite,* for appellants, as to the existence of a lien, cited: Steamship Dock Co. *v.* Herron, 52 Penn., 281; Angell & Ames on Corp., sec. 355; Mass. Iron Co. *v.* Hooper, 7 Cush., 183; Hart *v.* State Bank, 2 Dev. Eq., 111; Frankfort Turnpike Co. *v.* Churchill, 6 T. B. Monroe, 427; Dana *v.* Brown, 1 J. J. March, 306.

*Hutcheson & Carrington,* for appellee, on the existence of a lien, cited: Benj. on Sales, 2d ed., *et seq.*; 1 Parsons on Cont., 5th ed., 598, 599; Parks *v.* Hall, 2 Pick., 211, 212; 3 Parsons on Cont., 5th ed., 257; 2 Bouvier's Law Dic., 47; Whit. on Liens, 14; Angell & Ames on Corp., secs. 355, 570, 571; Red. on Railways, sec. 42, and note 5; Arnold *v.* Suffolk, 27 Barb., 424; Leggett *v.* Bank of Sing Sing, 24 N. Y., 283; 2 Wheat., 390; 2 Cowen, 770; 2 Watts, (Tenn.) 137, 138; 46 Penn. St., 94; Railway Company *v.* Clark & Shaw, 29 Penn., St., 151, 285; 15 S. & R., 140; 17 S. & R., 285.

As to the lien passing with the note, they cited: Foster *v.* Fox, 4 W. & S., 92; Carter *v.* Attoway, 46 Tex., 110; Wright *v.* Wooten, 46 Tex., 381; Cannon *v.* McDaniel, 46 Tex., 309; 13 Tex., 335; Duty *v.* Graham, 12 Tex., 427; 17 S. & R., 407; 5 Cowen, 202; 9 Cowen, 749; 1 Johns., 590; 33 Tex., 425; White *v.* Baldwin, 40 Tex., 231; Angell & Ames on Corp., sec 534; Quiner *v.* M. S. I. Co., 10 Mass., 482; Railway Company *v.* Clark, 29 Penn., St., 153; Union Bank *v.* Laird, 2 Wheat., 390; Reese & Fisher *v.* Bank, 14 Md., 271; Vanzandt *v.* N. C. Bank, 26 Conn., 153.

ROBERTSON, ASSOCIATE JUSTICE. — "A lien in general may be defined to be a right of retaining property until a debt due to the person retaining it has been satisfied; and as the rule of law is that in a sale of goods where nothing is specified as to delivery or payment, the

vendor has the right to retain the goods until payment of the price, he has in all cases, at least, a lien, unless he has waived it." Benjamin on Sales, sec. 796. In the sale of its stock on credit, the Houston and Texas Central Railway Company gave to the purchasers merely an obligation to deliver the shares on the payment of the price, in some instances; and in others, it issued conditional certificates, expressly withholding the right to dividends, the substantial thing contracted for, and on their faces not transferable. When the stockholder is denied the right to make a transfer or receive a dividend until his indebtedness to the company is paid, the company has a lien. Angell & Ames on Corporations, sec. 355. In effect, the company in this case contracted for and exercised the right substantially to retain possession of the stock sold until payment of the price, and thus, in our opinion, had at least a lien upon the shares. The right given the company in section five of the charter to sell delinquent stock, prescribes a remedy equivalent to the foreclosure of a lien, and should be held by implication to create the lien it effectuates. A lien is not the result of any form of expression, but the name given to a right, and what creates the right produces the lien.

It has been held that a general lien given to a corporation for any indebtedness of its members is an incident of the relationship, and not of the debt, and hence does not pass with the latter. Angell & Ames, on Corp , sec. 355. The reason of the rule does not apply to a lien given to secure, not indebtedness generally, but a particular demand. In such case the lien passes with the debt or ceases. This question arises only with respect to the lien created by section five. The lien created by the company's retention of the possession of the stock, is a security for the unpaid price. When the company has sold the demand for the unpaid price, what is to be done with the stock? The purchaser cannot demand it, because he has not paid the price, which under his contract is a condition precedent to his right to the stock. The holder of the purchase money notes cannot demand it, because the company is bound to deliver it to the original purchaser upon the payment of the notes. The duty of the company devolved upon it by its own contracts is to hold the stock for the purchaser if he pays for it, or as security for the purchase money notes if they are not paid. This is certainly not an onerous duty. The unissued shares occupy no room, require no care, and cause no expense.

Whatever may be the rule elsewhere, it is well settled in Texas that the assignment of the debt passes with it the liens that secure it. White v. Downs, 40 Tex., 231; 33 Tex., 425; 15 Tex., 554; 19 Tex., 213. That the notes were simple promissory notes cannot affect the question.

The facts, not their expression, create the lien. Neither does the ignorance of its existence on the part of the assignee extinguish the lien. By his contract, the purchaser has no right to the stock until he pays, and in its premature issue the company has neither the motive of interest, nor the incentive of right or equity. Why should the lien not pass? The company could derive no lawful benefit from its retention, and the defaulting purchaser has no conscionable right to have it cease. Not to pass the lien with the debt is perverting the purpose of its creation, and securing to the company or to the purchaser of the stock the iniquitous advantage of a wrong they have jointly perpetrated upon the holder of the notes. In its application to this case, the rule in Texas is the best in morals and most wholesome in effect.

When the company, in violation of its easy and voluntarily assumed duty, issued the stock, which it held as security, to the other appellants, the record does not disclose. It is not pretended that the present holders of this stock were purchasers for value, or otherwise occupy a better position than the company itself. Nor do we perceive, if the unconditional certificates were issued directly to them in lieu of the conditional certificates, and in performance of the stock bonds, how they could stand in any better attitude than the company itself. There is certainly nothing in the meagre statement of facts, nor in the contention of counsel, entitling them to escape with the stock, if the company would be bound if the stock had not been issued. The bonds and conditional certificates informed them that they were not entitled to the shares, unless the notes given for them had been paid, and they must be held, in the absence of any excusing facts, *particeps criminis* in the company's wrongful act.

The notes secured by this stock were executed by the makers and negotiated by the company from fourteen to sixteen years before the institution of this suit, and the judgments which perpetuated the secured debts, with two exceptions, were recovered in 1859 and 1860. The suit was commenced March 11, 1874.

As far as the company is concerned, the suit is for damages for destruction of a trust fund. It undoubtedly held the shares for the benefit of the purchaser, if the price was paid, and if not, then as security for the purchase notes; and when it sold the notes, it held the stock without other interest in it than that which arose from its obligation to issue it to the purchasers, upon the payment of their notes. There is nothing in the record to show that the company, whilst it held the shares, ever repudiated the trust; on the contrary, it recognized and acted upon it, though negligently and improperly, in issuing the unconditional stock to the other appellants. This dis-

position of the plaintiff's security is the basis of the plaintiff's demand against the company, and whether it is stale or barred by limitation, we cannot determine, as the record does not disclose when the unconditional certificates were issued.

The purchaser of the stock had no right to it until the price was paid, and after the company negotiated the purchase notes, it had no right to issue the stock until the notes were paid. It is an admitted fact that it did issue the stock before the notes were paid, and without inquiry as to whether they were paid or not. It is claimed that the plaintiff ought to have notified the company that the notes had not been paid. This position arises from a misapprehension of the company's duty. The company was required to hold the stock until the notes were paid; it was not required to do anything upon their non-payment, but was authorized to act only upon the payment of the notes. The holder of the notes knew that they were not paid; that the only condition upon which the company could rightfully issue the stock had not transpired; why should he notify the company that it must continue its inactivity ? It was certainly the duty of the company to ascertain that the notes had been paid before issuing the stock. That the notes were long past due would be a circumstance dispensing with great strictness in the proof of payment. But the company made no inquiry, dispensed with all proof, and without consideration issued the unconditional certificates to the present peculiarly favored holders.

We cannot discover how the appellee's laches has injured any of the appellants. The facts upon which he bases his right are admitted in the record, and time does not seem to have obscured them. When the unconditional certificates were issued does not appear, but as from the date of their issue they were held adversely by the present holders, and no question of limitation, though made in the court below, is saved by them in the record here, we may presume that this date was less than two years before the commencement of this suit. Up to that time the facts indicate that the company held the stock in recognition of the trust. The company's last act in connection with these shares was the issue of the stock to the other appellants, and that act rather recognized than repudiated the trust. After the sale of the purchase notes, the company had no pretence of a claim upon the stock in its own right, and does not appear ever to have asserted any. The record does not show that the present holders ever paid one cent for the shares respectively held by them, but it is shown that the instruments upon which the company improperly, but manifestly not inadvertently, issued the stock to them, notified them and

the company that their right was dependent upon a condition not shown to have been performed, and that the stock in their hands, if it should turn out that the condition was not performed, was subject to meritorious, though neglected, liens. The present holders with notice, and without consideration, could not be in any better position than the company itself. If the improper issue of the stock by the company, and the possession of it by the present holders, is a repudiation of the trust, it does not appear to have transpired long enough before the commencement of his suit to bar the plaintiff's remedy either at law or in equity.

We have considered only those issues agreed upon by the parties as material to a proper disposition of the case on this appeal, and these developing no error in the judgment below, that judgment is affirmed.

AFFIRMED.

[Opinion delivered at Tyler, December 11, 1885, and filed at Austin, March 25, 1886.]