48    241
75    33
77    351
48    241
89    248
91    82

## J. W. FLANAGAN v. H. M. AND O. B. CUSHMAN.

1. VENDOR'S LIEN.—It has been held by this court, from its first organization, that the vendor of land has an equitable lien upon it for the unpaid purchase-money, unless such lien has been expressly or impliedly waived or abandoned.

2. SAME—DEBT CARRIES THE LIEN.—It is regarded as settled, in this State, that the transfer or assignment of the debt carries the lien or security for its payment, unless it is shown that such was not the intention of the parties.

3. SAME—EFFECT OF TAKING ADDITIONAL SECURITY.—Where other security than the land is contracted for, equity does not infer that the vendor is entitled to a different and additional security from that stipulated.

4. VENDOR'S LIEN NOT LOST BY CHANGE IN EVIDENCE OF THE DEBT.—The lien is a security for the purchase-money as long as it remains unpaid. It is not merely a security for the note given in the first instance, but for the debt of which the note, when given, is merely the evidence.

5. SAME—CASE IN SUIT.—A sold a tract of land to B, and executed to him a title bond, taking his promissory note for the purchase-money. Subsequently, and after part of the note had been paid, and while B and family were residing on the land, B contracted with C to furnish the balance due on the purchase-money note, and on such payment A executed a deed to B, who at the same time executed his note to C for the money by him advanced and paid to A, recognizing in the note the vendor's lien, and at the same time executing a trust deed to secure the payment of the last note to C : *Held*, That as it appeared that it was not the intention to abandon the lien, the vendor's lien remained as against homestead rights of B and his family in the land.

6. RIGHT OF VENDOR UNTIL PURCHASE-MONEY IS PAID.—Until the purchase-money is paid, the better title remains in the vendor, and in the above facts the rights of the vendee are no better than if he

16

had renewed the note to A, and made simultaneously a mortgage to secure it. There was no instant of time during which the vendee had an unincumbered title.

APPEAL from Rusk. Tried below before the Hon. A. J. Booty.

December 6, 1870, at Henderson, in Rusk county, Webster Flanagan, H. M. Cushman, and C. T. Garland had the following transactions: Garland held a note on Cushman for a tract of land on which was due $3,823.13 gold. This sum Flanagan furnished and paid to Garland, who at the time executed a deed for the land to Cushman. Cushman, then residing upon the land with his family, executed his note to Flanagan for the money advanced, recognizing in the note that the vendor's lien on his homestead existed, to secure the note; and executed a trust deed to Flanagan for the land, to secure the note.

Webster Flanagan assigned the note and trust deed to J. W. Flanagan. R. W. Flanagan, as agent for the holder of the note and mortgage, made an ineffectual effort to enforce the trust by sale, and the land was by him deeded to J. W. Flanagan.

J. W. Flanagan brought suit in the ordinary form for trespass to try title against Cushman, and in another suit sought judgment against Cushman on the note, and an order enforcing the trust by sale. These suits were consolidated. Cushman and wife interposed their claim for 200 acres, including their residence, as homestead, and pleaded not guilty.

On the trial, no jury being demanded, the court held the sale by R. B. Flanagan void; rendered judgment for the amount due on the note; allowed homestead rights to Cushman and wife, but disallowed their selection as inequitable; appointed commissioners to lay out 200 acres, including improvements, for the homestead; ordered sale of the residue.

The plaintiff appealed. The facts in evidence were—

1. The promissory note of Cushman to Webster Flanagan

or bearer, reciting, "for which he holds a lien on my home-stead and land on which I live," of date December 6, 1870.

2. Mortgage, with power to sell, by Cushman to W. Flanagan, of same date, for the land, to secure the note, reciting that the note was "given for money borrowed of him to pay the balance of the purchase-money due" on it.

3. Deed from Garland to Cushman for same land, acknowledging full payment.

4. Plaintiff offered to prove, by Webster Flanagan, that the amount of the note was paid by him to Garland, as a part of the purchase-money due from Cushman to Garland; and at the time of the execution of the note and mortgage, and the payment of said money to Garland, it was distinctly understood by said Cushman, Garland, and Flanagan, that the lien for the purchase-money for said land, then held by Garland, should be retained by Flanagan; and the intent and meaning of the transaction was, that Flanagan was to be subrogated to all the liens and rights of Garland, and be protected as such. This was excluded.

5. It was admitted, that on December 6, 1870, at the date of the mortgage and note, Cushman and his wife and family resided on the land.

*James H. Jones,* for appellant, cited Eppinger *v.* McGreal, 31 Tex., 147; Dunlap *v.* Wright, 11 Tex., 597; Baker *v.* Clepper, 26 Tex., 634; Monroe *v.* Buchanan, 27 Tex., 241; Peters *v.* Clements, 46 Tex., 114; Wright *v.* Wooters, 46 Tex., 383; Ellis *v.* Singletary, 45 Tex., 27; Farmer *v.* Simpson, 6 Tex., 303.

*W. W. Morris,* also for appellant.

*Martin Casey,* for appellees, cited 1 Story's Eq. J., secs. 112, 113, 114, 115; Wynn *v.* Flannegan, 25 Tex., 778; Paschal's Dig., art. 1451; Bailey *v.* Harris, 19 Tex., 108; Mackey *v.* Wallace, 26 Tex., 526.

MOORE, ASSOCIATE JUSTICE.—It cannot be questioned that it has been held by this court, from its first organization, that the vendor of land has an equitable lien upon it for the unpaid purchase-money, unless such lien has been expressly or impliedly waived or abandoned. (Briscoe *v.* Bronaugh, 1 Tex., 326.) It is said to be "a natural equity that the land shall stand charged with so much of the purchase-money as" remains unpaid, without any special agreement to that effect. (Id.) It must also be now regarded as settled, in this State, that the transfer or assignment of the debt carries the lien or security for its payment, unless it is shown that such was not the intention of the parties. (Moore *v.* Raymond, 15 Tex., 554; Murray *v.* Able, 19 Tex., 213; McAlpin *v.* Burnett, 19 Tex., 500; White *v.* Downs, 40 Tex., 225; Cordova *v.* Hood, 17 Wall., 1.) Though the taking of personal security, (a chattel mortgage, assignment of collaterals, or a mortgage on other lands,) if unexplained, is evidence of an implied waiver of the vendor's lien,—or, to speak more accurately, where other security than the land is contracted for,—equity does not infer that the vendor is entitled to a different and additional security from that stipulated for. (35 Tex., 689.) But the presumption of abandonment, or waiver of the equitable lien, from taking the note or bond of the vendor, with other security for their payment than the land, is open to rebuttal by evidence that such was not the intention of the parties. (Ellis *v.* Singletary, 45 Tex., 27.)

If the purchase-money is unpaid, it will not be presumed that the lien is waived or abandoned, if, in view of the entire transaction, it appears that it was not the intention to release the land and rely upon other security. It is therefore said: Taking a mortgage upon the land, to secure the purchase-money, will not have this effect. "The question," says Walker, J., in the case of Wasson *v.* Davis, 34 Tex., 159, "is not whether the vendor relies upon his lien, but whether he relies upon the particular estate sold, for his money. If he intends to rely on the estate, the law gives him the equitable

lien, and it would not be fair to divest the lien, if he shows only a purpose to strengthen and not to abandon it. Courts look to the fact of the lien, not to the form; equity pursues the substance, not the shadow, and will not disregard the essence of things to insist on forms."

The lien, as has been often held, is a security for the purchase-money so long as it remains unpaid. It is not merely a security for the note given in the first instance, but for the debt of which the note, when given, is merely the evidence. (Cordova v. Hood, *supra*; Morris v. Lockett, 23 Ga., 23.)

Unquestionably, Cushman has never paid the entire purchase-money for the land upon which appellant claims a lien. The note which Webster Flanagan paid Garland was evidence of this debt. He could not get a title until Garland was paid. If Webster Flanagan had merely loaned or advanced Cushman the money to pay this note, relying on Cushman to secure its repayment by a mortgage upon the land after he should get title from Garland, neither he nor appellant, his assignee, would be entitled to a vendor's lien, or to have a decree for the sale of the homestead of appellees under such mortgage. (Malone v. Kaufman, 38 Tex., 454.) But such are not the facts of this case. The payment of the note which Garland held, his deed to Cushman, and the execution of the new note and mortgage to Flanagan, were the result of a mutual understanding and agreement between Flanagan and Garland, as well as Cushman.

These different instruments must be construed together, as exhibiting the several parts of an entire transaction.

It cannot be disputed, that if the new note had been given by Cushman to Garland in consideration of his surrender of the original note and the delivery of the deed to the land which Garland gave him, Garland would have been entitled to a vendor's lien for its payment; or if payment of the second note had been secured by the simultaneous execution of a mortgage in Garland's favor, he would have held the superior title to the land until the payment of the purchase-

money; or if Garland had transferred the original note to Flanagan before executing the deed to Cushman, or if a new note, secured by mortgage, as suggested above, had been transferred by Garland to Flanagan, he would have been entitled in equity to the benefit of Garland's lien or security. Or had the new note been made to Flanagan after the transfer or assignment to him of the original note, he would, unquestionably, have been subrogated to Garland's lien, unless it was clearly shown that such was not the understanding or intention of the parties. Now, unless equity disregards "the essence of things to insist on forms," can it make any essential difference whether the original note was actually transferred to Flanagan before the new note for the purchase-money was given or not? Whatever may be the forms of the transaction, it is clear that Cushman has never paid the purchase-money for the land. Flanagan paid the amount for which Cushman gave the note on which this suit is founded, to induce Garland to make him a deed for the land. Before he did so, it was understood, between both Garland and Cushman, that Flanagan was to be subrogated to Garland's securities. Equity, as previously said, looks to "the substance, and not the shadow," and infers the lien for the security of the debt, the unpaid purchase-money, and not merely the particular note which originally may have been given as evidence of its amount. The note given Flanagan being for the debt which Cushman agreed to pay for the land, appellant, as his assignee, is in equity entitled to a lien for its payment, unless this lien was waived by accepting the mortgage on the land. But if the giving of the mortgage would warrant such an inference, this inference may be rebutted by proof that such was not the intention of the parties to the transaction.

There is another view which may be taken of the matter, which leads to the conclusion that the court erred in holding that the 200 acres of the land claimed by appellees as their homestead, was not subject to sale on a foreclosure of the

mortgage. It is a familiar principle, that when the purchaser executes a mortgage to the grantor at the time he receives his deed, that, as between the parties, the superior title remains with the vendor, and that the purchaser does not, by his deed, acquire a right to the land to which the homestead claim of the family will attach until the mortgage is discharged.

The mortgage in this case was not made to the grantor; but in view of the fact that it was made to secure the purchase-money paid for the purchaser by the mortgagee, and in consideration of which the deed to the land was made, and that the purchaser, simultaneously with the delivery of the deed, executed the mortgage, it must be held that the equity of the mortgagee is the same, or, at least, his right to foreclose the mortgage is not less than if he had made the deed, instead of causing this to be done by the original vendor. There was no instant of time during which Cushman had an unincumbered title to the land. The deed to him was executed in consideration of the money paid by Flanagan, and to enable him, as all parties supposed, to secure its repayment by the mortgage. Under these circumstances, it must, we think, be clear, that he did not get by his deed a title to which the homestead right could attach, as against his mortgage.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.