### WILLIAM HURLBERT *vs.* WILLIAM WEAVER and Wife.

### August 7, 1877.

Mortgage of Equitable Title by Husband and Wife—Subsequent Conveyance of Legal Title to Wife of Mortgagor—When Court of Equity will Treat Such Mortgage and Conveyance as Contemporaneous.—One F. and defendant W. having mutual dealings and accounts with each other, and the former having also acquired an absolute title in fee, with right of possession, to certain premises, under a mortgage foreclosure sale against defendants, who still remained in possession, had a full settlement of all matters and demands between them, upon the basis that F. should release all claims

against W. and convey to him said premises for the sum of $2,678, upon the latter giving his promissory note therefor in that amount, and securing the same by a mortgage back upon said premises, executed by himself and wife, Lucretia. The note was given at the time of the agreement of settlement, and the defendant W. was allowed to continue in the undisturbed possession and use of the premises as the equitable owner, entitled to the fee; but, through inadvertence, neither the deed nor the mortgage was then executed. Thereupon F. transferred the note to one H., before maturity and for value, whereupon, the deed not having yet been given, defendant W. and wife executed and delivered to H. a mortgage on said premises, with full covenants of title, to secure said note, as and for the mortgage contemplated by the agreement of settlement, and for the sole purpose of carrying the same into effect, and upon no other consideration whatever. Thereafter, and for like purpose and consideration, and no other, F. executed and delivered to the wife of defendant W., as and for the deed agreed upon, a deed of conveyance of said premises, wherein, however, she was named as the grantee, instead of her husband. It appearing from the findings that this deed was taken by the wife with notice of its purpose, and full knowledge of all the facts, and that the several instruments were executed as parts of one transaction, though at different times, and it further appearing that no new or intervening equities have accrued in respect to either of the parties or third persons, *held,* that a court of equity will treat them as having been made at the same time, and give them legal effect accordingly, and that the grantee named in the deed, given in pursuance of the settlement, will not be permitted to make use of the legal title she thereby acquired, to the prejudice of the mortgage security originating in the same settlement, and in the hands of an innocent holder for value.

Action to determine the title to and obtain possession of certain premises. The cause was tried by the district court for Wabasha county, *Mitchell,* J., presiding, who found, *inter alia,* the following facts: That the defendant Weaver mortgaged the premises to one Brooks, in June 1857, and that in November of the same year the said Weaver, together with his wife Lucretia, mortgaged the same premises to one Foster; that the mortgage to Brooks was subsequently foreclosed, and the premises redeemed by the said Foster as a subsequent encumbrancer; that Foster afterwards foreclosed the second mortgage held by him, and that said Weaver did not redeem the premises from the foreclosure sale within the time allowed by law; that Weaver thereafter continued in possession of

the premises until April 1, 1866, when he had a settlement with Foster in relation to the amounts paid for the premises under both mortgages, and in relation to other matters between them, when it was found that the balance due from Weaver amounted to $2,678; that thereupon Weaver gave Foster his note for that amount, and that it purported upon its face to be secured by a mortgage; that subsequently Foster transferred this note to one Huff, and that on September 17, 1866, the said Weaver and wife, to secure the payment of the said note, delivered to the said Huff a mortgage containing full covenants of title, and covering the premises in controversy; that thereafter, on October 18, 1866, the said Foster delivered to the said Lucretia Weaver, without consideration, a deed in fee simple of the aforesaid premises, which was not recorded until September 29, 1871; that said note and mortgage were ultimately assigned, November 28, 1870, to the said plaintiff without notice of the said conveyance to Lucretia Weaver, and that, default having been made thereon, the same had been foreclosed, and the period of redemption had been suffered to expire. Under these circumstances the court inferred that when Foster and Weaver had their settlement on April 1, 1866, there was an express or implied agreement that Foster should reconvey the land to Weaver, and that Weaver should execute back to Foster a mortgage thereon to secure the note for $2,678, and that the mortgage to Huff was afterwards made for the purpose of carrying out this understanding. The court, therefore, held that Weaver had a mortgageable interest in the premises, and that this interest was not affected by the subsequent conveyance of the legal title to Lucretia Weaver. Judgment was therefore entered for the plaintiff, and a motion for a new trial was denied. The defendants appeal from the order denying this motion.

*Wilson & Taylor*, for appellants.

Lucretia Weaver was a married woman, and, therefore, not estopped, under the covenants in the mortgage delivered to Huff, from asserting her title under the subsequent convey-

ance from Foster. Gen. St. *c.* 40, § 2. *Jackson v. Vanderheyden,* 17 John. 167; *Carpenter* v. *Schermerhorn,* 2 Barb. Ch. 314; *Dominick* v. *Michael,* 4 Sand. 374; *Hopper* v. *Demarest,* 1 Zab. 541; *Wright* v. *Shaw,* 5 Cush. 56; 2 Smith's Lead. Cas. (7 Am. Ed.) 683; *Lowell* v. *Daniels,* 2 Gray, 164; *McGregor* v. *Wait,* 10 Gray, 72; *Bemis* v. *Call,* 10 Allen, 512; *Merriam* v. *R. Co.* 117 Mass. 241; *Wadleigh* v. *Glines,* 6 N. H. 17; *Drury* v. *Foster,* 2 Wall. 24; *Martin* v. *Dwelley,* 6 Wend. 9; *Heath* v. *Elliss,* 7 Hun. (N. Y.) 100; *Keen* v. *Coleman,* 39 Pa. St. 299; *Studwell* v. *Shapter,* 54 N. Y. 249. And even if a married woman could be estopped, under certain circumstances, by her covenants of warranty, it is clear that that doctrine can have no application to this case, because the plaintiff here stands in Foster's shoes, and is charged with Foster's knowledge of the facts. *Baker* v. *Ins. Co.* 43 N. Y. 283; Bigelow on Estop. 437.

In view of the statute of frauds the court below was not authorized to infer a contract by Foster to reconvey to Weaver, and the mere continuance of possession, or payment of the purchase money, was not such part performance as took the contract out of the statute. 2 Sug. on Vend. (8 Am. Ed.) *c.* 14, § 7; 1 Story Eq. Jur. §§ 760–767; *Wentworth* v. *Wentworth,* 2 Minn. 238, (277;) *Lentz* v. *McLaughlin,* 14 Minn. 72; *Glass* v. *Hurlbert,* 102 Mass. 24. Both the acts which take the contract out of the statute, and the proof by which the contract itself is established, must be clear and unequivocal.

*Simpson & Wilson* and *Abner Lewis,* for respondent.

Independent of covenants of warranty, Lucretia Weaver was bound upon grounds of public policy to preserve the property pledged for the purposes of the original security, and was therefore estopped from denying the existence of the mortgage lien. *Clark* v. *Baker,* 14 Cal. 612. The deed, moreover, from Foster was not recorded when the mortgage was assigned to the plaintiff, and was therefore void as against him. *Palmer* v. *Bates,* 22 Minn. 532.

CORNELL, J. So far as necessary to be stated or considered

in reference to any legal questions involved in this case, the following are substantially the facts as found by the court below:

Defendant William Weaver, being the owner in fee and in possession of the premises in question, duly gave to one Brooks a first mortgage thereon, to secure a certain indebtedness of his therein named, and also a second mortgage thereon, in which his wife, the said defendant Lucretia, joined, to one Foster, to secure another debt of his to the latter.

Both these mortgages having been duly foreclosed, and the period of redemption having expired, Foster, as a redemptioner from the first and purchaser under the last foreclosure, became the absolute owner in fee of said premises, with the right of immediate possession. Afterwards, on the first day of April, 1866, Foster being still such owner, though not in possession, and the said Weaver, who yet retained possession of the premises, "had a general settlement and liquidation of all matters and mutual claims or accounts with each other up to that time, by which it was ascertained and agreed that there was due Foster from Weaver the sum of $2,678. In making up and fixing this amount they included and took into account the amount which Foster had paid Brooks to redeem from the first mortgage, and also the amount for which Foster had bid in the premises in question on the foreclosure of the mortgage thereon from Weaver and wife to himself. Both these sums were included in and went to make up this balance of $2,678, and in this settlement were treated as existing claims in favor of Foster and against Weaver;" that, as part of the agreement of settlement, Foster was to reconvey the land to Weaver, and the latter was to give his promissory note for the amount found due on the settlement, and execute back to Foster a mortgage on the premises to secure the note. In carrying out the agreement the note was given at the time, stating on its face that it was secured by a mortgage, but for some cause neither the mortgage, nor the deed from Foster to Weaver, was in fact then executed.

The note was thereupon, before maturity, transferred by Foster to one Huff, and while the latter held the same as owner, to-wit, on the seventeenth day of September, 1866, Weaver and his wife Lucretia, for the purpose of carrying out the understanding between F. and W. at the settlement, executed, as and for the mortgage then agreed upon, a mortgage to Huff upon the said premises, containing full covenants of title, to secure said note, which was duly recorded October 3, 1866. Becoming the lawful and *bona fide* owner of this mortgage upon a valuable consideration, plaintiff duly foreclosed the same, and bid in the premises as purchaser, without any knowledge or notice, constructive or otherwise, of any antagonistic claim on the part of Mrs. Weaver. The period of redemption having expired, his rights in this action rest upon the validity of such mortgage and foreclosure as against her. It further appears, from the findings of the court, that Foster, on October 18, 1866, executed and delivered to said defendant Lucretia a deed of conveyance in fee simple of said premises; that no consideration, however, was paid by her at the time, or received from her by Foster, but the real and only consideration therefor was the said note executed by Weaver, the husband, to Foster on the settlement; and it is also found as a fact that this deed was likewise given "for the purpose of carrying out the understanding" between F. and W., at the settlement, in reference to the transfer of the title from the former to the latter. This deed was not recorded till December 20, 1871, long after the foreclosure of plaintiff's mortgage, nor was the same brought to his notice till that time.

Upon these facts the question is presented whether Mrs. Weaver will be permitted in a court of equity to make use of this deed, executed and delivered for the sole and specific purpose of consummating the agreement of settlement between her husband and Foster, and upon no other consideration, and of her legal title thereunder, to defeat the lien upon the property intended to be created by their mortgage to Huff.

It is expressly found that the deed and mortgage were given as separate parts of one transaction. Both originated in and had reference to the agreement of settlement, and were given for the sole purpose of carrying it into effect according to the original understanding of the parties thereto. Had they, in fact, been both executed and delivered at the same time, and as contemplated by the agreement, no question could possibly have arisen concerning the priority of either, or that the title which was passed by the deed to Mrs. Weaver was subjected to the lien created by the mortgage.

The mere fact that the parties inadvertently omitted their execution and delivery in the exact time and manner intended, ought not, and cannot, preclude a court of equity from treating them, when executed and delivered in pursuance and furtherance of the agreement, as having both been made and delivered when they ought to have been, and giving them effect accordingly. The question is wholly unembarrassed by any intervening equities, accrued since the agreement of settlement, in respect either to the parties thereto or to third persons. Both Foster and Weaver have acted upon the settlement and received its benefits, the former by the transfer of the note and mortgage, and the appropriation of the avails thereof to his own use, and the latter by continuing in the possession, use, and occupancy of the premises, under the agreement, as the equitable owner, entitled to the fee, mortgaging the same to secure the payment of his own debt, and obtaining, as must be assumed from the findings, the transfer of the legal title to his wife, as a trustee for his benefit, at least to the extent of such his mortgaged indebtedness to Foster.

Moreover, it appears that the parties, Weaver and Foster, had mutual dealings and accounts between themselves, extending over a period anterior to the date of the settlement in April, 1866, which were embraced and adjusted in the settlement. It is manifest if such settlement is to be now opened, and the parties thereto remitted to their legal rights,

the statute of limitations might be interposed to the possible prejudice of one or other of the parties. Under these circumstances to permit Mrs. Weaver to make use of the legal title which she received under this deed, with full knowledge of all the facts, and upon no other consideration than that growing out of the settlement between her husband and Foster, to the prejudice of the mortgage security originating in the same settlement and in the hands of a *bona fide* holder for value, would allow such an inequitable and fraudulent use of the instrument as ought not to be tolerated in a court of equity.

Order affirmed.