JOHN FEATHERSTONE, RESPONDENT, v. S. P. EM-
ERSON ET AL., APPELLANTS.

MORTGAGES—SUBROGATION—WHEN ALLOWED.

1. Page borrowed from Featherstone $2,000, which was secured by mortgage upon land which was afterwards sold to Brown and Emerson for $5,000. Brown and Emerson paid $1,000 cash, and agreed to pay the $2,000 mortgage thereon, and gave a purchase-money mortgage for $2,000 back on the property to Page. Emerson afterwards paid $1,200 on the last mortgage, and Brown, with the tacit agreement with Page that it should be a part of the old obligation, gave a new mortgage on his undivided half of the land for $800, which was given as a purchase-money mortgage, and Page released the $2,000 mortgage. Emerson had notice of the transaction. The $800 mortgage was assigned to Feather-stone, the plaintiff, who held both mortgages. After Feath-erstone had foreclosed the $800 mortgage, and obtained title to the undivided half of the land, Emerson paid $1,100, and tendered plaintiff the balance due on the $2,000 mort-gage that Brown and Emerson had jointly assumed, pro-vided that plaintiff would assign to Emerson the $2,000 mortgage. Plaintiff refused the tender or to make the assignment, but offered to assign the $2,000 and the $800 mortgage to Emerson, upon payment of the full amount due on both mortgages, which Emerson refused to do. *Held*, that Emerson was surety for Brown as to at least one-half of the two mortgages given and assumed by both; that the equities of Featherstone, as assignee of the $800 purchase-money mortgage given by Brown to Page, were superior to Emerson's right; that Emerson was not entitled to be sub-rogated, without having paid or offered to pay the $800 mortgage; that, as between Brown and Emerson, both were bound to contribute towards the discharge of the common joint burden; that, when purchase money is the consideration of the instrument, it will continue to be the consideration of any other instrument, if expressed therein, executed

by agreement in substitution of the old one, unless superior equities intervene, which have not in this case.

2. The release of the $2,000 mortgage, which Brown and Emerson were both obligated to pay, on payment of $1,2(0 by Emerson, and the giving of the $800 purchase-money mortgage on one-half of the land by Brown to Mrs. Page, upon such release, coupled with the tacit agreement that such new §800 mortgage should be a part of the former obligation, and the express agreement that it should be a purchase-money mortgage, with notice to Emerson, was for Emerson's benefit to the amount of $800, and should not be used as a weapon in the hands of Emerson to defeat Mrs. Page, nor her assignee, who succeeds to her rights in the mortgage, from recovering the purchase price of the land sold, without first paying or offering to pay the same.

3. The property was the primary fund to meet the obligation of both, and Mrs. Page held the mortgage as a purchase-money mortgage, and transferred her right to the plaintiff, whose equities are superior to those of Emerson or Brown, until tender or payment of the entire debt arising from the purchase.

(No. 687. Decided July 22, 1896.)

Appeal from the district court, Third judicial district, Territory of Utah. Hon. S. A. Merritt, *Judge.*

Action by John Featherstone against S. P. Emerson and others. From a judgment for plaintiff, defendant Emerson appeals. Affirmed. The facts are set out in the opinion of the Justices.

*Breeze & Burris* and *Moyle, Zane & Costigan,* for appellant.

As between purchasers in common of an estate bound by a joint lien or mortgage, each is bound to contribute only his proportion towards the discharge of the common burden and as to the remainder is to be considered simply as a surety; and if one of them is obliged to pay the

whole amount to protect his interests, he will be sub-
rogated to the rights of the owner of the lien or of the
mortgage, even without an express assignment of the
lien or mortgage, and will be protected as far as equity
can protect him.  Subrogation depends not upon contract
but upon natural justice, and "equality is equity."
*Gearhardt* v. *Jordan,* 11 Penn. St. Rep. 325; *Aiken* v. *Gale,*
37 N. H. 501; *Hubbard* v. *Mill Dam Co.,* 20 Vt. 402; *Simp-
son* v. *Gardiner,* 97 Ill. 237; *Laylin* v. *Knox,* 41 Mich. 40;
*Cornell* v. *Prescott,* 2 Barbour 16, *Ellsworth* v. *Lockwood,*
42 N. Y. 89–97; *Fisher* v. *Dillion,* 62 Ill. 379; *Young* v. *Mor-
gan,* 89 Ill. 199; *Matthews* v. *Aiken,* 1 Comstock (N. Y.)
595; *Williams* v. *Perry,* 20 Ind. 437; *Duncan* v. *Drury,* 9
Penn. St. 332; *Champlin* v. *Williams,* 9 Penn. St. 341; 3
Pomeroy's Equity Jurisprudence (1st Ed ), secs. 1211,
1212, 1220, 1922, and notes; 2 Brandt on Suretyship (2d
Ed.), § 302, § 309, § 315; Harris on Subrogation, secs.
103 and 143.

"The fact that the mortgage which the vendor takes
at the time of the conveyance is expressed to be for the
purchase money of the land is none the less a waiver of
his vendor's lien."     *Avery* v. *Clark,* 87 Cal. 619; *Baum*
v. *Grigsby,* 21 Cal. 173; *Camden* v. *Vail,* 23 Cal.
633; *Gaylord* v. *Knapp,* 15 Hun. (N. Y.) 87; *Pease* v.
*Kelly,* 3 Oregon 417; *Rhynier* v. *Frank,* 105 Ill. 326;
Pomeroy's Equity Jurisprudence (2d Ed.) § 1252 and
cases collected in note p. 1928.

Even if the Pages had not waived their vendor's lien
by taking the $2,000 and the $800 mortgages and by can-
celing the $2,000 mortgage, that lien existed only for
them and was lost by the assignment of the note and
mortgage to the plaintiff Featherstone; for on principle
and by the great weight of authority a vendor's lien is
a strictly personal right, and is therefore not assignable.
*First Nat. Bk.* v. *Salem Flour Mills Co.,* 39 Fed. Rep. 89;

*Hammond* v. *Peyton*, 34 Minn. 529; *Keith* v. *Horner*, 32 Ill. 524; *Bonnell* v. *Holt*, 89 Ill. 71; *Gruhn* v. *Richardson*, 128 Ill. 178; *White* v. *Williams*, 1 Paige (N. Y.) 502; *Jackman* v. *Hallock*, 1 Ohio 318; *Baum* v. *Grigsby*, 21 Cal. 173; *Avery* v. *Clark*, 87 Cal. 619; 2 Jones on Liens § 1092 and cases collected in notes.

Featherstone, the plaintiff here, was not the vendor, and of course cannot avail himself of the equities embraced in a vendor's lien.

Even if a vendor's lien were assignable, the assignment of the $800 note and mortgage to the plaintiff would not and did not assign the lien to him.

The assignment (p. 50 of the abstract) of the note and mortgage of $800, does not purport to assign the vendor's lien, and there is no evidence or finding that it does do so. We submit that on the law it does not do so. *White* v. *Williams*, 1 Paige (N. Y.) 502; *Jackman* v. *Hallock*, 1 Ohio Rep. 318; *Wellborn* v. *Williams*, 9 Ga. 86.

The doctrine of vendor's lien is indefensible and should not be recognized and enforced where it has never been adopted. *Ahrend* v. *Odiorne*, 118 Mass. 261; *Philbrook* v. *Delano*, 29 Me. 410; *Kauffelt* v. *Bown*, 7 S. & R. (Pa.) 64; *Hammond* v. *Peyton*, 34 Minn. 529; *Hiesler* v. *Green*, 48 Pa. St. 96; *Edmunster* v. *Higgins*, 6 Neb. 265. We submit the doctrine has not been and should not be adopted in Utah.

The contention of the plaintiff Featherstone that the $800 mortgage of October 26, 1891, is superior in equity to the $2,000 mortgage of Dec. 17, 1890, or at least to the rights of Emerson therein acquired by subrogation, because it is expressed to be for the unpaid purchase money, and therefore is a purchase-money mortgage or is in the nature of a vendor's lien is unsupported by the law; for a purchase-money mortgage given to the vendor

or a vendor's lien retained by him is not so peculiarly
sacred that it is superior in equity to a mortgage previ-
ously given by the vendor on the same property, and
since it is not superior in equity to such mortgage it is
not superior to the rights acquired in such mortgage by
subrogation. Brandt on Suretyship (2d Ed.), § 315.

*Frank Pierce,* for respondent.

*Subrogation is a creature of equity.*

This right does not grow out of contract relations, but
depends upon principles of natural justice and equity. It
is governed by no strict code or formal rules. Each case
makes its own appeal to the court and wins on its inher-
ent equity and justice. So far we agree with counsel for
the appellant. To the many authorities cited in support
of the above doctrine on pages 6 and 7 of his brief, we
take pleasure in adding the following: II Brandt on
Suretyship, sec. 298; Harris on Subrogation, secs. 162-
163; *Exchange Co.* v. *Bayless,* 21 Southeastern 279; *Spaul-
ding* v. *Harvey,* 28 Am. St. Rep. 176; 129 Ind. 106; *Cheese-
bro* v. *Millard,* 7 Am. Dec. 494; *Pease* v. *Egan,* 131 N. Y.
262; *Insurance Co.* v. *Fidelity Co.,* 123 Pa. St. 523.

*A pro tanto subrogation is never allowed.*

Emerson offers to pay only part of the obligation
which he incurred to Mrs. Page on August 26, 1891, but
seeks subrogation. He seeks a *pro tanto* subrogation.

Subrogation cannot be enforced until the whole debt
is paid to the creditor. Emerson must extinguish his
obligation in full before he invokes this extraordinary
remedy. Until the creditor is paid there cannot be any
interference with his securities which might prejudice or
embarrass him in the collection of the residue of his
claim. In the case at bar the property is the primary

fund to meet the *obligation,* that is, *payment of the purchase-money.* II Brandt on Suretyship, sec. 306; *Exchange Co.* v. *Bayless,* 21 Southeastern 279; II Brandt on Suretyship, secs. 308, 321; *Wilcox* v. *Fairhaven Bank,* 7 Allen 270; Harris on Subrogation, sec. 195; II Jones on Liens, sec. 1122; III Pomeroy Equity Jurisprudence, sec. 1220; *Hollingsworth* v. *Floyd,* 2 H. & G. (Md.) 87; *Kyner* v. *Kyner,* 6 Watts (Pa.) 221; *Receivers* v. *Wortendyke,* 27 N. J. Eq. 658; *Bank of Penn.* v. *Pontius,* 10 Watts. (Pa.) 148; *Magee* v. *Legelte,* 48 Miss. 139; *McConnell* v. *Beatty,* 34 Ark. 123; *Schoonover* v. *Allen,* 40 Ark. 132; *Zook* v. *Clemmer,* 44 Ind. 15.

*Subrogation is never invoked to defeat or interfere with superior or equal equities.* *Exchange Co.* v. *Bayless,* 21 Southeastern 279; III Pomeroy's Equity Jurisprudence, sec. 1419, and note.

No equities were lost by the assignment of the $800 mortgage to plaintiff. The assignment of the $800 note and mortgage transferred to the plaintiff all rights which Mrs. Page had. An express lien, which is created by the parties by agreement, as a mortgage for the purchase money, as in the case at bar, is always assignable, but it is held by many authorities, although there is a conflict in the authorities, that an implied lien which arises by operation of law, is not assignable. II Warvelle on Vendors, 736; *Stratton* v. *Gold,* 40 Cal. 778; *Lewis* v. *Hawkins,* 13 Wall. 119; *Avery* v. *Clark,* 87 Cal. 625; *Taylor* v. *McKinney,* 20 Cal. 618; II Jones on Liens, sec. 1119.

The authorities cited by counsel deal with implied liens which the law gives the vendor after he has parted with his legal title and has made no express agreement for security for the unpaid purchase money.

The term purchase money as used in purchase-money mortgages, means money paid for land or the debt created by the purchase of land. When purchase money is the consideration of an instrument it will continue to be

the consideration of any other instrument executed in substitution of the old one. Hence the purchase-money obligation of $2,000 of August 26, 1891, was carried into the $800 mortgage and no rights were waived. The $800 mortgage afterwards given was for part of the same purchase money. The court so finds. 19 Am. & Eng. Enc. 583; *Austin* v. *Underwood,* 37 Ill. 438; *Kimbale* v. *Esworthy,* 6 Ill. App. 517; *Flanagan* v. *Cushman,* 84 Texas 241.

A mortgage which is given subsequently to the conveyance of the land and execution of the mortgage thereon to secure the purchase money and which is intended to be substituted in place of such money, is a mortgage for purchase money, although by its terms it may extend the time of payment to a longer period. *Jones* v. *Parker,* 51 Wis. 218; *Pratt* v. *Topeka Bank,* 12 Kan. 570.

It is a well settled principle that a purchase-money mortgage given by the mortgagor to the vendor of land to secure a balance of unpaid purchase money, has priority over every claim or lien of any kind arising through the mortgagor, to the extent of the land purchased. 19 Am. & Eng. Enc. 575.

Nearly all of the decided cases recognize that a mortgage for purchase money, whether it be expressed in the mortgage or not, is an equity in the vendor equal and in many cases superior to a common law vendor lien. *Clark* v. *Brown,* 3 Allen 509; *Ellis* v *Horrman,* 90 N. Y. 466; *Spring* v. *Short,* 90 N. Y. 538; *Wilson* v. *Smith,* 52 Hun. 171; *Curtis* v. *Root,* 20 Ill. 518; *Christie* v. *Hale,* 46 Ill. 117; *Austin* v. *Underwood,* 87 Am. Dec. 254; *Bolles* v. *Corli,* 12 Minn. 113.

For the purposes of subrogation there is no difference between a vendor's lien and a mortgage given back to secure purchase money. II Warvelle on Vendors, 737.

MINER, J.:

It appears from the record that on December 17, 1890, the defendants Emily S. Page and E. J. Page borrowed from the plaintiff, Featherstone, the sum of $2,000, and gave him their note secured by a mortgage on the property in question. On August 26, 1891, the defendants Page and wife conveyed by warranty deed the said mortgaged property to defendants Brown and Emerson for the sum of $5,000, subject to the $2,000 mortgage of December 17, 1890, which the grantees jointly agreed to assume and pay. Brown and Emerson also paid to Page $1,000 in cash, and executed a purchase-money mortgage back to Page upon the property purchased for the sum of $2,000, as consideration for the premises conveyed to them. At the maturity of the $2,-000 mortgage, dated August 26, 1891, defendant Emerson paid $1,200 thereon, and Brown gave to Page a new purchase-money mortgage, dated October 6, 1891, upon his undivided half of the premises, for $800, to secure a part of the said purchase price, and Mrs. Page released the said $2,000 mortgage of August 26, 1891, of all of which Emerson had notice at the time. On March 1, 1892, Page assigned the said $800 mortgage to plaintiff Featherstone, so that Featherstone then held both mortgages upon the property, to wit, the $2,000 mortgage which both Brown and Emerson were obligated to pay, and the $800 purchase-money mortgage which Brown gave to Page upon his undivided half of the premises in order to release the former $2,000 mortgage upon which Emerson was jointly liable. "On the 17th day of January, 1893, there was due upon the note and mortgage of $2,000, given by said Emily S. Page to John Featherstone, December 17, 1890, the sum of $2,200, including interest, and thereafter, upon said day, said S. P. Emerson paid to the plaintiff $1,100 thereon, and tendered to plaintiff the balance due thereon if plaintiff would assign to Emerson

the mortgage of $2,000. Plaintiff refused to accept said tender or make said assignment, but offered to assign said mortgages of $2,000 and $800 to said Emerson, upon payment to him of the full amount due upon both of said mortgages, which said Emerson refused to do." In answer to Emerson's cross complaint, plaintiff alleges that the $800 note and mortgage, given by Brown to Mrs. Page as part of the purchase-money mortgage, and which was assigned to plaintiff, had been foreclosed, and plaintiff had purchased Brown's interest in the land under such foreclosure; and it appears that the plaintiff was in the possession thereof, and no adverse claim had been set up in the foreclosure proceedings by Emerson.

The errors assigned by the defendant Emerson raise the question of his right to subrogation to the former rights of the plaintiff in the $2,000 mortgage of December 17, 1890, as against Brown and Mrs. Page, and her assignee, the plaintiff, and the superiority of that right over the rights of Featherstone acquired under the $800 note and mortgage, although no tender or payment of the $800 mortgage had been made. Emerson claims that he is subrogated to the prior incumbrance to which the $800 incumbrance is inferior. The plaintiff contends, and the trial court held, that while Emerson was a surety for Brown as to one-half of the $2,000 mortgage of December 17, 1890, the equities of Featherstone, the plaintiff, as assignee of the $800 mortgage of October 26, 1891, given by Brown to Page for unpaid purchase money, was superior to Emerson's right, and that Emerson was not entitled to subrogation without having paid or offered to pay the $800 mortgage. The court decreed a dismissal of Emerson's cross complaint, and gave judgment for the plaintiff. As between Brown and Emerson, who were purchasers of a common estate, and bound by a joint obligation created thereon by them-

selves, each was bound to contribute his proportion towards the discharge of the common burden, and either could be compelled to discharge the debt. It was a joint obligation. If Emerson was compelled to pay the whole to protect his rights, he could be subrogated to the rights of the owner of the security, as against Brown's interest, upon tender or payment of the debt secured, if no other or greater equities intervened. The plaintiff, who was the owner of the $2,000 mortgage of December 17, 1890, is first in time and equity as to that mortgage, because he loaned his money on the property before any other rights attached. The obligation which Emerson and Brown took upon themselves was to pay $5,000 for the property. They purchased as tenants in common, each to take an undivided one-half interest; but they voluntarily obligated themselves jointly to pay the full amount. As to the holder of the obligation, they are the principal debtors; as to themselves they were sureties for each other for one-half of the debt. Their promise to pay the purchase money is evidenced by the $2,000 mortgage of December 17, 1890, which they assumed and agreed to pay, and by the $2,000 note and mortgage of August 26, 1891, which they gave, and which both agreed to pay. These form the remaining obligation, and as to each other they were of equal equity, amounting, in fact, to one debt of equal importance. As between Brown and Emerson, the first mortgage has no equity in advance of the second.

A purchase-money mortgage is a mortgage upon real estate, given upon a conveyance thereof, to secure the balance of the purchase money remaining unpaid. It is the debt created by the purchase. Such purchase-money mortgage usually has the priority over other claims or liens of any kind arising through the mortgage'

to the extent of the land purchased, except as it may be affected by the recording laws; and when the purchase money is the consideration of the instrument, it will continue to be the consideration of any other instrument executed by agreement, in substitution of the old one, even though a part of the purchase money on the original mortgage has been paid before the execution of the second, unless other superior equities have intervened, which we do not find to exist in this case. 19 Am. & Eng. Enc. Law, 583, 575-578; *Austin* v. *Underwood*, 37 Ill. 438; *Jones* v. *Parker*, 51 Wis. 218; *Pratt* v. *Bank*, 12 Kan. 437; *Flanagan* v. *Cushman*, 48 Tex. 241; 2 Warv. Vend. pp. 736, 737.

The payment by Emerson of $1,200 on the $2,000 mortgage of August 26, 1891, paid so much of the joint debt. The fact that Mrs. Page released the $2,000 mortgage of August 26, 1891, on payment of the $1,200 by Emerson, and the giving back of the purchase-money mortgage of $800 by Brown on his undivided part of the land, with the tacit agreement that such mortgage should be a part of the obligation of August 26, 1891, and the express agreement that it should be a purchase-money mortgage, of all of which Emerson had notice at the time, was to Emerson's benefit to the amount of $800 remaining unpaid, and should not be used as a subrogation weapon by Emerson to defeat Mrs. Page, nor the plaintiff, who succeeds to her rights in the mortgage, from recovering the purchase money actually due for the purchase price of the land sold, without first paying or offering to pay the same. Jones Mortg. § 229, and cases cited; 2 Warv. Vend. 736; 2 Jones, Liens, § 1116; *Hurlbert* v. *Weaver*, 24 Minn. 30; 19 Am. & Eng. Enc. Law, 583. As a general rule the right of subrogation cannot be enforced until the whole debt is paid or tendered to the creditor. Emerson should have extinguished the debt before invoking the remedy sought.

Until the creditor is paid, there cannot ordinarily be any interference with his security which might prejudice or embarrass him in collecting the balance of his claim. The property was the primary fund to meet the obligation, and Mrs. Page held the purchase-money mortgage as such, and transferred her right to the plaintiff. 3 Pom. Eq. Jur. § 1619; Sheld. Subr. §§ 127, 176, 177; *Investment Co.* v. *Bayless* (Va.) 21 S. E. 279; 2 Brandt, Sur. §§ 306, 308, 321, 446; 2 Warv. Vend. §§ 736, 737; *Grubbs* v. *Wysors*, 32 Grat. 127; *Clark* v. *Warren*, 55 Ga. 575.

The equity of Mrs. Page for the unpaid purchase-money mortgage of $800 is therefore superior to the equities of both Emerson and Brown, and, until she was paid in full, neither has any just equitable right against her, or her assignee, the plaintiff. Emerson, as surety for Brown, has an equity superior to that of Brown in the property, and, as against Brown, this equity could have been invoked after payment of the whole debt. Until payment, the plaintiff's equity is superior to the defendant's, Mrs. Page's equity is superior to that of Emerson, and Emerson's to that of Brown. We are of the opinion that the judgment of the court below should be affirmed. It is affirmed accordingly.

BARTCH, J., concurs.

ZANE, C. J. (dissenting):

It appears from the record in this case that defendant Emily S. Page, on December 17, 1890, borrowed $2,000 of the plaintiff, John Featherstone, and that on the same day she gave her note and mortgage on real estate owned by her to secure the same; that the note was made payable in two years from its date, and drew interest at 1 per cent per month; that the mortgage was duly recorded, and provided for the payment of an attorney's fee of $100

in case suit should be brought to collect the same. It also appears that the defendant Page, on August 26, 1891, conveyed the land by a sufficient deed to defendants Robert Brown and S. P. Emerson, for the consideration of $5,000; that the grantees paid at the time $500 each, and assumed the payment of the note mentioned above, and to secure the remainder they gave their note for $2,000, and a mortgage on the same property; that the note was payable in 60 days from its date, and drew interest at 1 per cent per month, and provided for the payment of 10 per cent thereon as an attorney's fee, in case suit should be brought to collect it; that this mortgage was also recorded; that the above-mentioned deed was in express terms made subject to the mortgage first named; and that each of the defendants took an undivided half interest under the deed, and agreed between themselves that they should respectively pay one-half of the purchase price. It also apears that on October 26, 1891, when the second note became due, Emerson paid $1,000, his half of it, and $200 of Brown's share, making $1,200, and that Brown gave his individual note for $800 for the balance due Mrs. Page. In consideration of the payment of this $1,200, Emerson was expressly released from further liability for this $2,000 note, and the mortgage to secure it was satisfied. Heath, Featherstone's agent, testified as follows: "Q. Was the $2,000 mortgage paid, and, if so, how? A. It was paid by Emerson sending me a check for something over $1,200." To another question the witness further stated that Brown gave his individual note for the remaining $800, secured by a mortgage on Brown's undivided half of the land. Witness was further examined as follows: "Q. State whether this 60-day $2,000 mortgage was paid off and released at that time. A. It was; the first short mortgage was paid." Counsel for Featherstone asked: "Do you know? A. Yes. Q.

Did you send this note and mortgage, after it had been released, to Emerson? A. I think I did. Q. The note was not paid in cash, was it? A. No, sir. Q. Just as you have stated? Yes, sir." It also appears that Emerson produced the $2,000 note and mortgage in evidence on the trial, and that after this $2,000 note had been paid, as shown by the evidence, and the mortgage to secure it had been satisfied, it was satisfied on the record as follows: "Salt Lake City, Utah, Nov. 2, 1891. Declared satisfied by entry on margin of the record by Emily S. Page." This entry on the margin of the record was duly signed by the recorder as the statute required. It also appears that after this $2,000 note had been paid, and the mortgage to secure it had been released, and both had been returned to Emerson, that Featherstone purchased the $800 note of Mrs. Page, paying for it $700. It also appears that Emerson, before this suit was brought, paid Featherstone one-half of the original $2,000 note given by Mrs. Page to him, with all interest due, and afterwards tendered the balance remaining due on that note, and an attorney's fee of $100, but that Featherstone refused to accept it and return the original $2,000 note unless Emerson would also pay the $800 note given by Brown to Mrs. Page, to which Emerson was not a party. It also appears that Featherstone foreclosed the $800 mortgage, and obtained Brown's individual one-half of the land, but that Emerson was not a party to this foreclosure suit, and it does not appear that he had any notice of it. It also appears that Featherstone afterwards instituted his action against Emerson and Brown to foreclose the mortgage given to him by Mrs. Page.

In view of the foregoing facts, Emerson filed his answer to the complaint of Featherstone, and filed his cross complaint against Featherstone and Brown, in which he alleged the foregoing facts, and asked to be subrogated

to Featherstone's rights under the mortgage which he had tendered payment of in full. Emerson and Brown having purchased the land, and each having taken an undivided one-half of it, in the absence of any express agreement, they were, as between themselves, liable to pay one-half of the purchase price, and were respectively bound to pay one-half of the mortgage to Featherstone. As between themselves, each was bound to contribute his proportion to discharge the common burden, and beyond that the law regarded each as the surety of the other for the payment of the other's part, and, if one should pay more than his part, he would stand in the place of the satisfied creditor to the extent of the excess paid. The creditor has no right to object, and the joint debtor cannot complain, because his surety is in that way enabled to collect a just debt against him. Such right of subrogation is based upon the plainest principles of equity. *Gearhart* v. *Jordan*, 11 Pa. St. 325; *Simpson* v. *Gardiner*, 97 Ill. 237.

But it is insisted that Emerson cannot be subrogated to the rights of Featherstone by virtue of the first mortgage for $2,000 given by Mrs. Page to him, because he became the assignee of the mortgage to secure the $800 note by Brown to Mrs. Page. The subrogation is only asked to the extent that Emerson is compelled to pay Brown's portion of the first note. He was not bound to pay the $800 note. He was not a party to it. Mrs. Page would not rely on her vendor's lien when she sold the land to Emerson and Brown, and she took their note for the unpaid purchase price, and a mortgage to secure it. In accepting that mortgage she waived her vendor's lien, if she had any. All her equities, if any, because of the consideration of the note being a portion of the purchase price, were merged in that mortgage. "When any other independent security is taken as a

mortgage on the land, or upon other land, or the personal responsibility of a third person, the lien is held to be waived, unless there is at the time an express agreement for its retention.     *     *     *     The fact that the mortgage which the vendor takes at the time of the conveyance is expressed to be for the purchase money of the land, is none the less a waiver of his vendor's lien." *Avery* v. *Clark*, 87 Cal. 619; *Baum* v. *Grigsby*, 21 Cal. 173; *Camden* v. *Vail*, 23 Cal. 634; *Gaylord* v. *Knapp*, 15 Hun. 87; 3 Pom. Eq. Jur. (2 Ed.) 1252. In the case of *Ryhiner* v. *Frank*, 105 Ill. 331, the court said:

"We do not apprehend that there could be any going back to the time of McCoy's purchase of the lots on January 20, 1879, and asserting a lien on the premises from that time as a vendor's lien for the purchase money, but that the taking of the trust deed would be a waiver of the implied vendor's lien, and that such deed would be the sole measure of the vendor's right in the land for the security of payment of the purchase money." In the case of *Pease* v. *Kelly* the court said: "A mortgage is a more certain and definite security than a vendor's lien. The lien exists if there is no higher security, but we think that the taking of a mortgage, which is an open and public lien, is a waiver of the vendor's lien, and we think that both liens cannot exist at the same time, and such seems to be the well-established doctrine of the cases." 3 Or. 417.

Mrs. Page having waived her equities against the land in question, except such as she obtained by virtue of her second mortgage, which does not profess to be for the purchase price, she had none to transfer, except such as the mortgage expressly gave her; and this mortgage, as it appears from the evidence above referred to, she expressly released on the 26th day of October, 1891, in

consideration that Emerson would pay the one-half of the note secured by it, and $200 on Brown's half, and by the execution of an individual note by Brown for the balance, and a mortgage on his half to secure it. The second note for $2,000 was regarded as paid, and the mortgage satisfied on the record by Mrs. Page, and both note and mortgage were delivered to Emerson in pursuance of the understanding of the parties, and he, having them in possession, produced them in evidence on the trial. Mr. Emerson was not a party to this $800 note, and it was expressly understood that he was not to be. How, then, can he be held in any way for the payment of that note to Mrs. Page or her assignee? Her assignee, who shaved the note at much less than the amount due, was informed of all these facts when he afterwards took an assignment of it, for the public record disclosed the fact that the $2,000 note had been satisfied, and that Emerson was not on the $800 note, and that the mortgage to secure it was against Brown alone, and on his individual half of the land. There can be no doubt as to the payment and satisfaction of the second $2,000 mortgage, and the fact that Emerson was not bound to pay the $800 note.

But if the vendor's lien, or any equity against Emerson, with respect to the land, had existed outside of the mortgage, and had not been waived by it, such lien or equity did not pass to Featherstone by virtue of the assignment of Brown's $800 note. The great weight of authority is to the effect that it does not. Where such lien is recognized, it is to the vendor, and does not pass to his assignee. In the opinion of the court by Chief Justice Field, in the case of *Baum* v. *Grigsly*, 21 Cal. 173, the court said: "Indeed, with the exception of decisions of two or three states, the adjudged cases are uniformly against any assignment of the lien by a transfer of the note or personal security of the vendee. * * * The

assignee of a note given for the purchase money stands in a very different position. He has not parted with the property which he seeks to reach in consideration of the note which he has received. He has never held the property, and has therefore no special claims upon equity to subject it to sale for his benefit. * * * 'The vendor's lien,' says the supreme court of Tennessee, 'is nothing more than a mere equity, capable of acquiring the force and effect of a lien, under certain circumstances, in the event of the nonpayment of the purchase money.' * * * But this lien is a mere personal equitable right of the vendor, and is not assignable. It looks only to the vendor, and does not pass to the assignee of the vendee's obligation for the consideration, and, consequently, cannot be enforced in his favor." From the large number of cases we cite the following: *First Nat. Bank* v. *Salem Capital Flour-Mills Co.*, 39 Fed. 89; *Hammond* v. *Peyton*, 34 Minn. 529; *Jackman* v. *Hallock*, 13 Am. Dec. 627; 2 Jones, Mortg. 1092; *Keith* v. *Horner*, 32 Ill. 524; *Bonnell* v. *Holt*, 89 Ill. 71; *Gruhn* v. *Richardson*, 128 Ill. 178; *White* v. *Williams*, 1 Paige 502; *Wellborn* v. *Williams*, 52 Am. Dec. 427.

But it is claimed that the subrogation of Emerson to the rights of Featherstone under the first mortgage, without paying the later mortgage given by Brown alone to Mrs. Page, and assigned to Featherstone, would be a subrogation *pro tanto*. But that would not be a *pro tanto* subrogation. The second $2,000 note and mortgage, for the remainder of which the $800 note and mortgage were given, were paid as to Emerson, and satisfied and given up to him, and Mrs. Page had no further claim on him, legal or equitable, after the $800 note given by Brown. To hold that this last mortgage, given by Brown alone to Mrs. Page, must also be paid, would be to tack onto the first mortgage by her to Featherstone the mort-

gage by Brown, given at a later day, and to which Emerson was not a party. Brandt, in his work on Suretyship and Guaranty, says: "The surety who pays a debt secured by mortgage will by means of subrogation thereto have preference over a subsequent mortgage on the same property, given by the principal to the creditor to secure a subsequent debt." 2 Brandt, Sur. § 315; *Bank* v. *Silliman*, 65 N. Y. 475. The debt which Emerson was compelled to pay was a prior one, and Featherstone must have known of Emerson's right to subrogation upon paying it when he purchased the subsequent $800 note given by Brown alone. If a surety on any number of notes less than the whole number secured by a mortgage satisfies such as he is surety upon, he cannot, without paying all of the notes, be subrogated to the rights of the mortgagee or his assignee, because that would deprive the creditor of his security without payment of the debt. Such subrogation would be *pro tanto*. Emerson is not asking for subrogation upon payment of a part of the indebtedness which the mortgage was given to secure. He tenders the entire debt secured by it. The $800 mortgage simply states that it is given for Brown's unpaid portion of the purchase money. There is no other agreement as to a purchase-money mortgage, and cases cited above hold that such statement cannot transfer to the assignee of a purchase-money mortgage the equitable lien in favor of the vendor; and certainly it cannot do so after such lien or equity has been abandoned by taking the second $2,000 mortgage as in this case.

I will refer to some of the authorities principally relied upon, cited in the opinion of the court. 2 Warv. Vend. 736, and 2 Jones, Mortg. 1116, are cited. Those sections are confined to cases where there is an express agreement for a lien, or where the vendor has not parted with his legal title. They can have no application to this

case. The same must be said of the sections referred to in Sheldon on Subrogation. Page 583, 19 Am. & Eng. Enc. Law, cited, contains one very broad statement. The author, however, refers in a note to the case of *Austin* v. *Underwood*, 37 Ill. 438. That was a case under the statutes of Illinois, which did not permit a homestead right to defeat the collection of the purchase money for the land. The case of *Flanagan* v. *Cushman*, 48 Tex. 241, is against the great weight of authority, and it further holds that the mortgage places the superior title to the land in the mortgagee. It appears that Featherstone obtained one-half of the land upon the foreclosure of the mortgage, for which he paid $700. If Emerson has no equities under his cross complaint, his one-half will cost him, in principal, interest, attorney's fees, and costs, more than $4,000.